UNITED STATES of America,
Plaintiff-Appellee,

v.

Samuel LONGEE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

James Edward CHASER,
Defendant-Appellant.

Nos. 78–3565, 78–3566.

United States Court of Appeals,
Ninth Circuit.

June 25, 1979.

Gary E. Wilcox, Billings, Mont., Francis J. McCarvel, Glasgow, Mont., for defendants-appellants.

Lorraine D. Gallinger, Asst. U. S. Atty., Billings, Mont., for plaintiff-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge.

The defendants appeal from judgments of conviction for voluntary manslaughter, in violation of 18 U.S.C. §§ 1112[1] and 1153,[2] after a trial to the court, a jury having been waived, following the death of David Marcus Fast Horse by a gunshot wound in the head in the Fort Peck Indian Reservation, Montana, on April 26, 1978.

The factual background established by the record is substantially what follows. On April 25, 1978, the defendants Chaser and Longee, accompanied by Coleen Devereau, aged 16, James Shy Face, and Lawrence Fast Horse, were having a party at which alcohol was consumed at the home of Helen Walker on the reservation. The convivial drinking had begun earlier in the evening in two bars and continued with the consumption of beer and vodka at the Walker home. Helen Walker is the mother of Longee, Chaser, and Lawrence Fast Horse, who are half-brothers. The deceased, David Marcus Fast Horse, was Chaser's first cousin. During the evening, he had joined the party, accompanied by Tony Lee Jones.

In the early morning of April 26, a dispute arose between Longee and the deceased, who went out to his car with Coleen Devereau. Chaser, carrying a .30–.30 rifle, and Longee, with a shotgun, followed. Longee shot through the car windshield, then forced Chaser to fire at the deceased through an open door by threatening Chaser with the shotgun. Coleen Devereau witnessed the beginning of the dispute, but fled the scene, and although she heard three shots from a distance, she did not see the shooting.

A Fort Peck tribal policeman, Calvin Red Thunder, received a report of shootings at about 6:30 a.m. on April 26. When he arrived at the Helen Walker residence, he found David Marcus Fast Horse lying dead face down in a pool of blood partly out of the driver's side door of his car. It was later determined that the cause of death was a .30-caliber bullet wound in the head.

Chaser emerged from the house, appearing intoxicated, and engaged in some conversation with Red Thunder. When other officials arrived, the persons still in the house—Longee, Lawrence Fast Horse, and Shy Face—were persuaded with some difficulty to come out. All three appeared to be intoxicated. A search of the house was made and physical evidence was obtained

---

* The Honorable Edmund L. Palmieri, Senior District Judge for the Southern District of New York, sitting by designation.

1. 18 U.S.C. § 1112 provides in pertinent part:
   (a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
   Voluntary—Upon a sudden quarrel or heat of passion.
   Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

2. 18 U.S.C. § 1153 provides in pertinent part: Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, . . . manslaughter, . . . within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

which was subsequently suppressed. The Government did not appeal from the order of suppression, 18 U.S.C. § 3731.

While Chaser, Longee, Shy Face, and Lawrence Fast Horse were gathered near Red Thunder's patrol car, both Red Thunder and Duane Smith, another tribal police officer, heard Chaser say to Longee: "You are the one who told me to shoot him, man." The four men were taken to the Fort Peck tribal jail at about 7:30 a.m. on April 26.

Both Chaser and Longee were interviewed in the early afternoon of the same day by FBI Special Agent Howard Sellers. Chaser executed a waiver of rights form and made a statement to Sellers. Despite Chaser's drinking during the previous evening and in the early morning hours, he did not appear, in Sellers' estimation, to be intoxicated. He was described by Sellers as calm, alert, and attentive. Chaser verified for Sellers the accuracy of each sentence of the statement as it was being written. The statement reads in part, as follows:

> Sam Longee came in and got his shotgun and told me to get my rifle because he was fighting outside. . . . I got my .30–30 and Sammy held his shotgun on me and made me go outside. Sammy went around a blue car in which a guy was sitting. I didn't know at the time that it was Marcus Fast Horse. . . . Sammy told me to shoot him (Marcus) or he, Sammy, would shoot me. Sammy then said "just to prove it, I'm going to shoot in here," at which time, Sammy shot through the windshield and Marcus slumped over in the seat. Sammy then told me to shoot him so I didn't feel I had a choice because he pointed his shotgun at me and jacked another shell into the chamber. I held my .30–30 at waist level and fired one shot through the open driver door of the blue car. Marcus didn't move when I shot.

Longee gave an oral account to Sellers after appropriate warning of his constitutional rights. It was put into writing by Sellers but not signed by Longee. He stated he had been drinking with Lawrence Fast Horse; that sometime after dawn his half-brother Chaser entered the house and said, "I just shot someone." Longee then went outside, found Marcus Fast Horse lying on the ground beside a car, picked him up, saw he was bloody, got blood on himself, laid him down, and reentered the house and resumed drinking. Sellers testified that Longee did not appear to be intoxicated when he interviewed him.

The district court substantially adopted Chaser's account of the incident and credited the statement made by Chaser to Longee, "You are the one who told me to shoot him, man." It was also concluded that the statement given by Chaser to Sellers was freely and voluntarily given with full cognizance of Chaser's rights, meeting the test of admissibility under *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The court further found that Longee was not so intoxicated as to have been incapable of forming the specific intent required for conviction of aiding and abetting the crime of voluntary manslaughter.[3] These findings were not clearly erroneous and are therefore not subject to appellate attack. Fed.R.Crim.P. 23(c); *United States v. Hart*, 546 F.2d 798, 801–02 (9th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977).

### Violation of the Bruton Rule

Neither Chaser nor Longee testified at the trial, and we are confronted at the outset by a clear violation of Longee's constitutional right of confrontation. The right of a defendant to cross-examine the witnesses against him is guaranteed by the confrontation clause of the sixth amendment to the Constitution. U.S.Const.

---

3. Longee was charged as an aider and abettor pursuant to 18 U.S.C. § 2.

amend. VI.[4] When two or more defendants are tried in a joint proceeding, as was the case here, an out-of-court statement of one which inculpates another may not be admitted in evidence when the maker of the statement does not testify at the trial, for the effect would be a denial of the right of confrontation. *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In such a case, the incriminated codefendant may be denied his right to a fair trial as well. U.S.Const. amend. V;[5] *United States v. Sanchez,* 532 F.2d 155, 157–58 (9th Cir. 1976).

Here, the admission in evidence of Chaser's remark to Longee as overheard by the two tribal policemen ("You are the one who told me to shoot him, man") and Chaser's written statement to the FBI constituted a violation of the *Bruton* rule. These statements, which portrayed Longee as the inducer of the crime charged, were admitted under circumstances which did not permit any cross-examination of Chaser, who made the statements, because Chaser did not take the witness stand.

The fact that the defendants were tried to the court rather than to a jury does not eliminate the error. The disregard of incriminating evidence as against only one defendant in a joint trial has been termed "a mental gymnastic which is beyond, not only [the jury's] powers, but anybody's else." *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir. 1932) (L. Hand, J.), *quoted in Bruton,* 391 U.S. at 132 n.8, 88 S.Ct. at 1626. It is for this reason that the use of a limiting instruction in a jury trial is inadequate to cure the error. *Bruton,* 391 U.S. at 135–37, 88 S.Ct. at 1627–29. Here, there was neither an objection by defense counsel nor an indication in the record that the district judge attempted to disregard Chaser's statements as evidence against Longee. Indeed, he specifically referred to them in his findings.

The *Bruton* principle was not mentioned at trial. In fact, the defendants raised it on this appeal only in their reply brief in apparent response to a short subsection in the Government's brief on appeal entitled "Violation of the *Bruton* Rule—Deemed Waived." The *Bruton* objection could not be waived. The admission of the statements against Longee constituted plain error.

Admission of the statements was not harmless error under the standard of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"). *See Schneble v. Florida,* 405 U.S. 427, 430–32, 92 S.Ct. 1056, 1058–60, 31 L.Ed.2d 340, 344–46 (1972); *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171, 172–74 (1963). On this record, the error was not harmless beyond a reasonable doubt; and as plain error, it can be noticed on appeal even though it was not raised below. Fed.R.Crim.P. 52(b); *United States v. Lopez,* 575 F.2d 681, 685 (9th Cir. 1978). Longee's conviction must therefore be reversed.

The evidence against Chaser, however, is valid and persuasive. Admission of his own statements against him, of course, was not error. The statement of Longee, that Chaser told Longee that he had shot someone, was related by Sellers at the trial but apparently was not relied on by the district court and is not referred to in its opinion. In any case, there was sufficient independent evidence of Chaser's guilt to render admission of this testimony harmless error beyond a reasonable doubt. *Schneble v. Florida, supra; see United States v. Goldberg,* 582 F.2d 483, 489 (9th Cir. 1978); *United States v. Glasser,* 443 F.2d 994, 999 (2d Cir. 1971).

### The Allegedly Faulty Investigation by the Government

■ The defendants contended at the trial, as they do on this appeal, that the loca-

---

4. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

5. "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."

tion of the entry and exit wounds in the skull of the deceased were of some significance. They suggest that, once identified as such, the wounds could indicate a ricochet, thereby supporting a theory of accidental death, but that this theory could not be pressed persuasively due to the absence of skull X rays. These X rays were taken at the post-mortem examination and were lost by Dr. Carey C. Allison, who conducted the examination at the Government's request.[6] The defendants further complain of prejudice allegedly ensuing from the failure of investigators to administer breathalyzer tests or blood or urine alcohol-content tests, or to preserve and test the bloodstains found in the house.

These alleged prejudicial faults in the Government's investigatory process need not detain us. Chaser's ricochet contention was unpersuasive, totally apart from the possible significance of the missing X rays, because there was evidence before the lower court that a ricocheted bullet would probably bear scratch marks or deformations, and make an oblique or reverse entry of the target; and there was evidence here that the bullet had made a direct entry and had no telltale markings or deformations, remaining round and symmetrical as it was prior to being fired.

█ The failure of the Government to take blood or urine tests for alcohol content was not prejudicial so as to prevent a fair trial. Voluntary intoxication is not a defense to a charge of voluntary manslaughter, since that crime requires only a general intent and therefore the "exculpatory rule" applicable to specific-intent crimes does not apply. *Kane v. United States*, 399 F.2d 730, 736 (9th Cir. 1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969).

Moreover, it is evident that Chaser was not intoxicated at the time of his interview with FBI agent Sellers and was capable of making a voluntary statement. The district court so held, noting that the latest possible time when Chaser could have been actually drinking was some six hours before making the statement, and that Sellers testified that Chaser was not drunk at the time of the interview. The statement was freely and voluntarily made and was persuasive evidence of Chaser's guilt.

The record supports the trial court's factual appraisal that the loss or failure to gather other evidence during the investigation did not bear on the ultimate facts at issue and did not prejudice the defendants.

### The Joint Representation of the Defendants

We were advised at the argument that the defendants insisted upon their joint representation by the same retained counsel. Inquiry was made by the court *sua sponte* because the failure to assert the *Bruton* objection until an advanced stage of the appellate process indicated to us an insufficient appreciation of the conflicting interests of Longee and Chaser. This conflict was discernible prior to trial through the Government's disclosure of statements by the defendants to the investigating officers.

We are, of course, aware of the necessity to accommodate the rights of defendants to be represented by counsel of their own choice,[7] particularly here since we are dealing with retained defense counsel, *United States v. Weiner*, 578 F.2d 757, 773–74 (9th Cir.) (per curiam), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); *United States v. Vowteras*, 500 F.2d 1210, 1211 (2d Cir.) (per curiam), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *United States v. Alberti*, 470 F.2d 878, 881–82 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973). We

---

6. Subsequent to oral argument on this appeal, we were advised by the United States Attorney that the missing X rays had been found. We do not consider this fact to have any significant impact upon our disposition of the case.

7. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

allude to the matter solely as a cautionary note to counsel because of the desirability of greater sensitivity to this delicate problem which, in this instance, appears to have required separate trials of the defendants.

### Conclusion

Chaser was convicted on substantial evidence after a fair trial. Longee, who seems to have been the more culpable of the two since it was he who apparently induced the commission of the crime, must be retried because of the *Bruton* error.

The judgment of conviction as to Chaser is affirmed. The judgment of conviction as to Longee is reversed and remanded for a new trial. Release of the appellant Chaser on bail is revoked now.