725 P.2d 252
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Gloria AUSTIN, Defendant-Appellant.**

No. 8337.

Court of Appeals of New Mexico.

Dec. 10, 1985.

Janet Clow, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, Sam Laughlin, Jr., Hobbs, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

**OPINION**

MINZNER, Judge.

After a jury trial, defendant appeals her conviction of twenty-two counts of embez-

zlement, contrary to NMSA 1978, Section 30–16–8 (Repl.Pamp.1984). The appellate issue is whether certain computerized private business records were admissible. We hold that they were not and that, because there was insufficient other evidence to support the conviction, defendant must be discharged.

## FACTS

In February 1982, defendant's employer, Tommy Owen, began to operate a Western Union Agency at a motel he owned in Hobbs. He originally operated the agency as a part of the motel. As the agency's business increased, Owen offered defendant the job of full-time clerk.

At trial, there was testimony about the procedures defendant usually followed and the records she kept. Defendant asked each customer to complete an order form, kept a copy of the completed form and gave the customer a copy. Having accepted the money to be wired, plus the fee, she telephoned the main office of Western Union in Kansas City, gave a code number that identified her location, and provided details of the proposed transfer. Defendant recorded the transaction on her own daily log, or "blue sheet." At the end of each day, she prepared a deposit slip for the money received that day, and, the next day, a motel employee deposited the prior day's receipts.

At trial, there was also testimony about certain records sent to Hobbs by the main office of Western Union. Each month, Owen received a computer printout, which purported to show the transferee, amount wired, fee charged and total received by the Hobbs agency for each transaction during the prior month. Owen maintained an agency file in his motel office in which he kept the printouts, but apparently did not review them. In May 1982, he moved from Hobbs to Texas. The main office continued to send the printouts to Hobbs, and a motel employee filed them. Owen visited Hobbs every two to three weeks.

Some months after defendant was hired, the main office notified Owen that their records indicated the bank balance was in-

sufficient. In turn, he approached defendant. They compared the printouts and the blue sheets and discovered several transactions recorded on the printouts but not on the blue sheets. There were no customer order forms for the additional transactions, the total of which equaled the missing money. At this time, Owen expressed suspicion that defendant's daughter, who visited the office occasionally, was responsible for the shortages. Defendant eventually agreed to reimburse Western Union through salary deductions.

For several months, there were no further problems. Then, shortages began again, although the date is unclear. This time, the shortages were not identifiable solely as missing transactions.

Defendant testified that she quit work in January 1984 for medical reasons. Owen testified that he closed the agency temporarily, had an audit performed, and then reopened the agency. He testified that he experienced no further shortages.

At trial, the printouts and the blue sheets were introduced into evidence. Only Owen and defendant testified.

## DISCUSSION

Defendant contends that there was insufficient evidence concerning the mode of preparation and safekeeping of the printouts to satisfy the requirements of NMSA 1978, Evid.Rule 803(6) (Repl.Pamp.1983), the business records exception to the hearsay rule. The state urges us to hold that Owen was qualified to provide the requisite foundation.

We assume, but need not decide, that the printouts were admissible under the rule on which the state relies. The confrontation clauses of both the state and the federal constitution provide that in "all criminal prosecutions," the accused "has the right to be confronted with the witnesses against him." U.S. Const. amend. VI; N.M. Const. art. II, § 14 (Cum.Supp.1985). The fact that the evidence may have been admissible under an exception to the hearsay rule does not necessarily satisfy defendant's constitutional right of confrontation. *State v.*

*Martinez,* 99 N.M. 48, 653 P.2d 879 (Ct. App.1982). When an out-of-court statement is offered against an accused in a criminal case, the state must satisfy the constitutional requirements of the sixth and fourteenth amendments, as well as any evidentiary rules. *Id.; see State v. Lunn,* 82 N.M. 526, 484 P.2d 368 (Ct.App.1971).

Ordinarily, the constitutional right of confrontation constrains the admission of hearsay in a criminal trial in two ways. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). One constraint is a rule of necessity, and the other guarantees trustworthiness. First, the prosecution must produce any declarant whose statement it intends to use against the defendant or demonstrate the declarant's unavailability for trial. Second, even if the declarant's unavailability is demonstrated, the statement may be admitted only if it bears adequate "indicia of reliability." *Id.* at 66, 100 S.Ct. at 2539. This analytical framework, however, is a flexible one. Generally, well-established hearsay exceptions are presumptively reliable. *Id.* There are cases, however, where the out-of-court declarant is, in fact, a witness against the defendant. In such cases, evidence may be admissible under a hearsay exception but offend the confrontation clause. *See generally United States v. Keplinger,* 572 F.Supp. 1068 (N.D.Ill.1983) (in lengthy, complicated case involving a large amount of documentary evidence, business records fell within exception to rule of necessity).

The business records exception to the hearsay rule is founded on considerations of practical necessity and inherent reliability. *Id.* There is a split in authority among the federal circuit courts, nevertheless, on the question of whether records admissible under Evid.Rule 803(6) consistently satisfy confrontation challenges. 4 J. Weinstein & M. Berger, *Weinstein's Evidence* § 803(6)[07] (1985). No hard and fast rule has emerged from the relatively few cases that have considered the issue. *Compare United States v. Peden,* 556 F.2d 278 (5th Cir.), *cert. denied,* 434 U.S. 871, 98 S.Ct. 216, 54 L.Ed.2d 150 (1977) (no violation of confrontation clause where records were purely factual in nature, there were indicia of trustworthiness, and the custodian was available for cross-examination at trial) *with United States v. King,* 613 F.2d 670 (7th Cir.1980) (no violation of confrontation clause where maker of record, available for cross-examination at trial, could not remember details of interviews during which record made). *See also* Annot., 61 A.L.R. Fed. 359, 378 (1983).

From such cases, however, it is clear that, in some circumstances, the prosecution need not satisfy the rule of necessity as to business records because the practical value or utility of cross-examination is minimal or remote. For example, the business records may not provide any evidence that is "crucial" or "devastating." *See United States v. Keplinger.* The evidence at trial, taken as a whole, may eliminate any real danger of unreliability. *United States v. King.* The presence at trial of a qualified witness other than the maker, coupled with other indicia of reliability, may provide an adequate opportunity for cross-examination. *See United States v. Peden. Cf. State v. Dawson,* 91 N.M. 70, 570 P.2d 608 (Ct.App.1977) (finding no confrontation violation in the admission of properly authenticated records under Evid.Rule 803(8)(A) and (B)).

In addition, in some circumstances, public policy considerations will excuse the lack of an opportunity for cross-examination. *United States v. Keplinger.* For example, where substantial numbers of complex business documents must be introduced, the prosecution should not be required to produce every person who made an entry in every business record admitted.

In summary, then, the prosecution must establish at trial that the rule of necessity is not applicable as to business records it wishes to introduce. *See State v. Martinez.* The prosecution may do so by showing that (1) the utility of cross-examination as to the particular records is minimal or remote; (2) the other evidence at trial affords defendant an adequate opportunity to

test the reliability of the records; or (3) public policy considerations otherwise excuse the prosecution from producing the out-of-court declarant or showing his or her unavailability.

We note that computerized records differ in important ways from traditional business records. *Cf. Monarch Federal Sav. & Loan Ass'n v. Genser,* 156 N.J.Super. 107, 383 A.2d 475 (1977) (a proper foundation was not laid where, among other things, there was no testimony as to how computer program originated or competency of those who programmed the computer and processed the daily input); *see also* Annot., 7 A.L.R.4th 8 (1981). Without deciding what would have been the applicable foundation requirements had this been a civil case, we hold that the state failed to demonstrate an exception to the rule of necessity and that defendant was denied her constitutional right of confrontation. Since the state did not produce the out-of-court declarants or demonstrate their unavailability, it was error to admit the printouts.

The record does not indicate that the utility of cross-examination was remote. *Cf. State v. Owens,* 103 N.M. 121, 703 P.2d 898 (Ct.App.1984) (utility of cross-examination remote where stated purpose was not relevant to guilt). As defendant observes, the material issue as to the printouts was whether they accurately reflected all, and only, the transfers originating in Hobbs. If so, they provided the critical proof of money received by the agency but not deposited to the account of Western Union.

At trial, there was no evidence that Owen understood how the computer printouts were prepared. Defendant's testimony at trial indicated that she, like Owen, did not know how the printouts were prepared. There were no other witnesses or evidence relevant to the printouts. None of the evidence at trial established how the main office recorded and preserved the information received from local agents. Because Owen did not compare defendant's records and the printouts prior to the time Western Union reported a discrepancy, his experi-

ence with the agency did not establish reliability.

The evidence in this case was neither bulky nor voluminous. The state made no effort to demonstrate the unavailability of witnesses other than Mr. Owen. Under these circumstances, there are no public policy considerations that outweigh defendant's right of confrontation. *Cf. State v. Vigil,* 103 N.M. 583, 711 P.2d 28 (Ct.App. 1985) (analyzing the use of a videotaped deposition in certain cases of sexual assault).

The only evidence of shortages attributable to defendant was obtained by a comparison of the computer printouts with her own records. Because we hold the printouts were not admissible, there was insufficient evidence to convict defendant. Under these circumstances, the cause must be remanded with instructions to discharge defendant. *State v. Losolla,* 84 N.M. 151, 500 P.2d 436 (Ct.App.1972).

IT IS SO ORDERED.

BIVINS and GARCIA, JJ., concur.