785 P.2d 262

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Patrice CRISLIP, Defendant–Appellant.**

**No. 10480.**

Court of Appeals of New Mexico.

Nov. 7, 1989.

Certiorari Denied Dec. 21, 1989.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, N.M., for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Appellate Defender, Santa Fe, N.M., for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals her conviction for child abuse resulting in death contrary to NMSA 1978, Section 30–6–1(C) (Repl.Pamp. 1984). She raises five issues on appeal: 1) ineffective assistance of counsel; 2) failure to excuse a juror for cause; 3) improper questioning of witnesses by the court; 4) prosecutorial misconduct; and 5) cumulative error. In sum, defendant contends she was deprived of her fundamental right to a fair trial. U.S. Const. amend. VI, XIV; N.M. Const. art. II, § 14. We agree. We reverse and remand.

### FACTS

On the afternoon of March 27, 1987, Stephen Cody Comeau (Cody), the defendant's fourteen-month-old son, was admitted to the emergency room of St. Mary's Hospital in Roswell. The child was transported by his stepfather (defendant's husband) and a neighbor. He was unconscious and not breathing. Though Cody showed some brief improvement in response to medical treatment, his condition subsequently worsened and he died on March 31, 1987. At trial, the state presented testimony of medical witnesses that Cody was the victim of "battered child syndrome." The cause of death was later determined to be child abuse involving multiple blunt injuries to the head causing fractures of the skull, blood on the surface of the brain, and swelling of the brain. Defendant and her husband, Robert Crislip, were each charged with child abuse resulting in death.

Defendant and her husband were scheduled for separate trials and appointed separate counsel. Counsel for defendant and for Robert Crislip opposed joinder on the grounds that the defendants would be presenting antagonistic defenses and that each defendant had made statements to the police which would implicate the other. In his statement to the police, Robert Crislip claimed he saw defendant beating Cody about the head on March 24, 1987, three days before Cody was taken to the hospital. Robert Crislip's trial was scheduled to begin on November 10, 1987, and defendant's trial was set for December 8, 1987. Robert Crislip disappeared shortly before his trial date and was still missing at the time of defendant's trial.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's main contention on appeal is that she was denied effective assistance of counsel. She claims numerous instances of deficient performance by her court-appointed trial attorney. Defendant's appellate attorneys did not represent her at trial. We only address those instances we find most troublesome.

An accused is entitled to effective assistance of counsel. *State v. Robinson*, 99 N.M. 674, 662 P.2d 1341 (1983); U.S. Const. amend. VI; N.M. Const. art. II, § 14. The standard for ineffective assistance of counsel is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent attorney. *State v. Orona*, 97 N.M. 232, 638 P.2d 1077 (1982); *State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct.App.1986). In order to prevail on an ineffective assistance claim, the defendant must show her counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced.

*State v. Talley,* 103 N.M. 33, 702 P.2d 353 (Ct.App.1985). Prejudice is measured by "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The test for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. In reviewing an ineffectiveness claim, the entire proceedings must be considered as a whole. *Id.; State v. Talley.*

1. Admission of Codefendant's Statement

■ Defendant testified on her own behalf and denied having abused her child. During cross-examination, the prosecutor repeatedly referred to the statement her husband had given to the police. Specifically, the prosecutor asked, "isn't it a fact, Mrs. Crislip, that you did not state, that you did not claim amnesia or memory loss, until after May 29th, when your husband gave a statement to the police in which he said he saw you beating Cody on the 24th of March?" The prosecutor also questioned defendant concerning her recollection of the events of March 24, 1987, inquiring, "So your only source of information about what happened that day is what other people have told you and that's one of the things that Robert has said, is it not, that you struck Cody in the face and the head that day?" The prosecutor cross-examined defendant about a "blackout claim" never made at trial. He repeated the content of Robert Crislip's statement at least four times.

Defense counsel remained silent during this line of questioning by the prosecutor. In fact, no protective action whatsoever was taken regarding this statement. Defense counsel did not move to suppress Robert Crislip's statement, did not object, did not move to strike the state's reference to the statement, did not move for a mistrial, and did not even seek a limiting instruction. After the close of the evidence, the trial court inquired concerning defense counsel's failure to object to the introduction of this evidence and on its own motion gave a limiting instruction concerning the statement made by defendant's husband. The court instructed the jury to consider the statement only in relation to the alleged blackouts brought in through Dr. Daugherty's testimony. Defendant's trial counsel agreed to the limiting instruction, suggested by the court, but did not request that the court further instruct the jury not to consider the statement as substantive evidence against the defendant.

After conviction, the court on its own motion summoned defense counsel and the defendant to an in camera hearing to determine, among other things, why defense counsel failed to seek suppression of the statement. The trial judge indicated he was seriously concerned about the introduction of this evidence and its "very damaging" nature. In response to the court's inquiry, the following colloquy occurred:

Defense counsel: I do not recall [the statement] coming in ... I don't recall....

Defendant: You did, because you told me you were going to object to it and I was surprised when you didn't.

Defense counsel also indicated: "I do not recall that particular thing now, I'll have to look through my file notes on that particular thing."

Following further questioning by the court, defense counsel was unable to explain why he did not object or attempt to suppress this evidence.

■ Defendant contends her counsel's failure to protect her from the out-of-court statement violated her constitutional rights to confrontation and cross-examination. She relies on *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Douglas v. Alabama,* 380. U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). We agree. Counsel's failure to protect defendant from the unsworn, out-of-court accusation by codefendant fell below the standard of a reasonably

competent attorney. Moreover, the admission of Robert Crislip's statement was prejudicial to the defense.

Confrontation concerns arise when an out-of-court statement is offered against an accused in a criminal case. *State v. Austin,* 104 N.M. 573, 725 P.2d 252 (Ct.App. 1985); *State v. Martinez,* 99 N.M. 48, 653 P.2d 879 (Ct.App.1982). These concerns are especially acute when a codefendant implicates a defendant in such a statement. In *Lee,* the United States Supreme Court held that a trial court's reliance on a codefendant's confession as substantive evidence against the defendant violates defendant's sixth amendment confrontation rights. The Court ruled that an accomplice's out-of-court statement implicating a defendant is presumptively unreliable. Not only is it subject to all the dangers characteristic of hearsay generally, but it is less credible than ordinary hearsay due to the motivation to exonerate oneself and implicate another. Thus, the Court found that a codefendant's statement inculpating an accused must contain sufficient indicia of reliability to overcome the weighty presumption against its admission. *Id. See also State v. Earnest,* 106 N.M. 411, 744 P.2d 539, *cert. denied,* 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987).

■ Robert Crislip's statement bore none of the necessary indicia of reliability. First, Robert Crislip was attempting to shift the blame to defendant. Second, the statement was not against Robert Crislip's penal interest. Third, there was no direct independent evidence at trial which corroborated his claim that defendant beat her child on that day or on any other day. *Cf. State v. Earnest* (codefendant's statement was reliable where he received no leniency in exchange, did not attempt to shift responsibility, was strongly against his penal interest, and was corroborated by independent evidence). Also, Robert Crislip was not free from the motive to mitigate the appearance of his own culpability by implicating defendant. *Lee v. Illinois.* In fact, as noted earlier, the attorneys requested separate trials precisely because the defenses were antagonistic. Therefore, we conclude that had defense counsel interposed a timely objection the statement would have been inadmissible because it violated defendant's confrontation rights. Moreover, we agree with defendant that the normal assumption that a jury will be able to follow its instructions is inapplicable in this case. *See Bruton v. United States.* The trial court's limiting instruction to the jury at the close of the evidence was insufficient to cure the prejudicial impact of the statement. *See State v. Martinez,* 102 N.M. 94, 691 P.2d 887 (Ct.App. 1984) (limiting instruction will not cure prejudice where statement unerringly and devastatingly refers to defendant).

The state argues the statement was not used for the substantive purpose of proving that defendant beat Cody, but that it was introduced to impeach defendant's claim of blackouts and memory loss, and to show collusion between defendant and her husband. The state relies on *Tennessee v. Street,* 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985) for the rule that a defendant's confrontation rights are not violated when an accomplice's out-of-court statement is used for non-substantive purposes.

In *Street,* defendant testified that his confession was a coerced imitation of a codefendant's confession and that he had been directed by the sheriff to adopt the codefendant's confession as his own. In rebuttal, the prosecutor called the sheriff who denied that Street was pressured to repeat his accomplice's statement. To corroborate this testimony and rebut Street's claim of coercion, the sheriff read the codefendant's confession to the jury. Before the statement was received, the trial judge twice informed the jury to consider it only for the limited purpose of proving the truthfulness of Street's claim of coercion. The Supreme Court held the confession admissible for this limited purpose. The Court noted that defendant created the need to admit the statement and "there were no alternatives that would have ... assured the integrity of the trial's truth-seeking function." *Id.* at 415, 105 S.Ct. at 2082.

■ We do not find *Street* applicable to the facts of this case. Here, defendant did not make blackouts a part of her defense. She did not create a need to bring in codefendant's statement. The state argues that the statement was used for impeachment purposes and to show collusion. We disagree.

The only evidence concerning blackouts was introduced by the state, through Dr. Daugherty, during its case-in-chief. During direct examination of defendant, no reference was made to any lack of recollection or to any statement given by her husband. The state attempted to impeach defendant by asking about the omission of any mention of blackouts in defendant's earlier statement to the police. Defendant did not testify as to blackouts until cross-examination by the state. She testified that "the business about the 24th of March came up after my husband informed me in a letter that that had happened." Defendant had consistently maintained she could remember nothing unusual about that day and, if in fact she had blacked out, all she knew was what other people told her.

Robert Crislip's out-of-court accusation that defendant had beaten her child was not admissible to impeach anything defendant testified to at the trial. Furthermore, we do not see how his accusation would tend to establish collusion. The state contends that defendant colluded with codefendant to flee the jurisdiction. This argument, however, is unpersuasive. If it were acceptable, then almost any accusation by an unavailable, living declarant would be admissible.

The state has not demonstrated a legitimate purpose for the introduction of the statement, nor are we persuaded that the statement was not prejudicial to defendant. The state's case against defendant was primarily based on testimony that Cody was a victim of the "battered child syndrome," and that defendant and her husband were in charge of his care. Except for Robert Crislip's statement, there was no other evidence that defendant had ever beaten the child. This evidence was subject to being stricken if defense counsel had properly moved for its exclusion. Defendant's case was prejudiced by the failure of her attorney to protect her from this highly unreliable accusation. *Strickland v. Washington.*

### 2. Attorney–Client Privilege

■ Defendant claims that trial counsel was ineffective in failing to protect her attorney-client privilege in regard to the defense-requested mental examinations. Defendant claims her counsel's failure to oppose disclosure of the evaluation to the state, as well as his failure to object to the state's use of Dr. Daugherty at trial, denied her effective assistance of counsel.

Pursuant to a defense motion, the trial court ordered a psychological evaluation of defendant. Subsequently, defense counsel requested the court to authorize a neuropsychological evaluation of defendant because the first evaluation identified a need for further testing. Defense counsel arranged for the testing through the Public Defender Department. However, before he saw the report, defense counsel agreed to provide the state with a copy. The defense witness list indicated a neuro-psychiatrist might be called to testify. But Dr. Daugherty, who performed the evaluation, was not subpoenaed by the defense. Instead, she was called by the state.

On direct examination, Dr. Daugherty testified that the purpose of her evaluation was to determine the physical cause for blackouts and memory lapses defendant reported experiencing. She testified that defendant had reported occasionally experiencing blackouts, usually for a few seconds or minutes, including a memory loss for the entire day of March 24th. She also testified there was no evidence of brain damage in defendant, but although the blackouts were not due to brain damage, they could have other causes such as trauma or stress.

We find counsel's failure to exclude this testimony fell below the standard of a reasonably competent attorney. *State v. Orona.* Defendant did not rely upon memory loss or blackouts as part of her defense. Evidence on these matters was elicited by

the prosecution without any objection by defendant's trial counsel. It put defendant's mental stability at issue. While it is improper for a prosecutor to comment on the character of the accused if defendant has not placed her character in issue, *State v. Diaz*, 100 N.M. 210, 668 P.2d 326 (Ct. App.1983), defense counsel allowed such a comment by providing the state with the neuro-psychologist's report and allowing the state to call the doctor as a prosecution witness.

We agree with the state that Dr. Daugherty's testimony was not damaging to defendant in and of itself, and thus does not provide the requisite prejudice for defendant's claim of ineffective assistance of counsel. Defense counsel's decision not to oppose the state's use of the doctor's testimony and report, however, was cumulatively an aspect of ineffective assistance of counsel. *State v. Talley.*

3. Counsel's failure to prepare for trial and interview experts regarding their testimony

Defendant contends her trial counsel failed to properly investigate the case in preparation for trial and failed to develop any trial strategy other than relying on codefendant being tried first and found guilty, thus giving defendant some basis for leniency.

At the *in camera* hearing convened by the trial court, the judge expressed a strong concern about defense counsel's strategy and preparation for trial. The judge was specifically concerned about counsel's preparation for the expert medical testimony offered by the state. Defense counsel indicated he never interviewed one of the state's primary witnesses who testified as to the cause of death, nor did he verify the statements made in the medical reports and the trial. Defense counsel stated that his trial strategy was to obtain a conviction on a lesser included offense or to somehow get leniency based on codefendant's conviction. However, he did not even submit a lesser included offense instruction. The court did so on its own motion.

We will not attempt to second-guess the strategy of trial counsel on appeal. "Bad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel." *State v. Orona*, 97 N.M. at 234, 638 P.2d at 1079. The failure of defendant's court-appointed trial counsel to interview the witness prior to her being called to testify concerning the cause of death of the child raises a serious question concerning the adequacy of defense counsel's preparation for trial, whether defendant's attorney was in a position to properly evaluate the case against defendant, to adequately question witnesses, or to consider possible defenses.

CONCLUSION

■ We hold that defense counsel's representation fell below the requisite standard required in *Orona*, in allowing the state to use the psychologist's report on the defense requested mental examinations, in allowing the state to call Dr. Daugherty as a witness, and in not protecting defendant from the codefendant's out-of-court statement. These errors permitted the prosecution to use a "blackout defense" defendant never contemplated. The prosecution then proceeded to knock down this "defense" by the introduction of codefendant's highly prejudicial out-of-court statement. We find a reasonable probability that, absent these errors, the fact finder would have a reasonable doubt respecting guilt. *State v. Taylor*, 107 N.M. 66, 752 P.2d 781 (1988). We also note that the trial court's concern regarding defense counsel's preparation and zealousness, and our review of the other alleged errors, indicate the likelihood that counsel was incompetent in his preparation for the trial. *State v. Talley.*

As shown by the record, defense counsel's representation failed to measure up to the standard required of a reasonably competent attorney. *See State v. Orona; State v. Taylor.* The failure to interview key witnesses prior to trial, to file appropriate motions, interpose timely and proper objections, submit appropriate instructions, and failure to move to exclude the hearsay

statement of defendant's husband, all combined to deprive defendant of a fair trial.

We find the cumulative impact of the instances of ineffective assistance of counsel was so prejudicial as to deprive defendant of a fair trial. *State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984); *State v. Talley*. While defendant is not entitled to a trial free from errors, she is entitled to a fair trial with her defenses fairly presented. *State v. Talley; State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974).

Because we have determined that defendant was deprived of a fair trial because of ineffective assistance of trial counsel, we need not address the other issues raised by defendant on appeal.

Reversed and remanded.

HARTZ, J., concurs specially.

DONNELLY, J., concurs.

HARTZ, Judge (specially concurring).

I concur in the result and concur in the majority's discussion regarding the inadmissibility of the statement by Mr. Crislip accusing defendant of beating the child. Rather than basing reversal on ineffective assistance of counsel, however, I would reverse because of plain error.

Perhaps as a practical matter every reversal predicated on plain error is a consequence of ineffective assistance of counsel. One could rely on either doctrine here. Nevertheless, ordinarily it is unwise to reverse a conviction on the basis of ineffective assistance of counsel when, as in this case, there has been no adversary proceeding to explore what reasons there may have been for the action or inaction of defense counsel. Deciding nonfrivolous claims of ineffective assistance of counsel without the record of such a hearing can be a quite inefficient process. Appellate courts can spend considerable time and effort attempting to determine why an attorney acted in a particular manner, when an adversary proceeding below could have resolved the question conclusively. Moreover, decisions made without a record of such a hearing are prone to error. Appellate courts must resort to speculation; they

may hypothesize tactical reasons for conduct which in fact constituted ineffective assistance of counsel, or they may fail to consider a justification for conduct that might appear to constitute ineffective assistance. To avoid such inefficiency and error, when substantial claims of ineffective assistance of counsel are raised on direct appeal from a judgment of conviction, we should either remand for a hearing on the matter or require defendant to resort to post-conviction remedies under SCRA 1986, 5–802.

The California Supreme Court, in an opinion by Chief Justice Bird, adopted essentially the same view in *People v. Pope*, 23 Cal.3d 412, 426, 590 P.2d 859, 867, 152 Cal.Rptr. 732, 740 (1979). She wrote:

> In some cases, ... the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged. In such circumstances, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, these cases are affirmed on appeal. Otherwise, appellate courts would become engaged "in the perilous process of second-guessing." Reversals would be ordered unnecessarily in cases where there were, in fact, good reasons for the aspect of counsel's representation under attack. Indeed, such reasons might lead a new defense counsel on retrial to do exactly what the original counsel did, making manifest the waste of judicial resources caused by reversal on an incomplete record.
>
> Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus. In habeas proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of. For example, counsel may explain why certain defenses were or were not presented. Having afforded the trial attorney an opportunity to explain, courts are in a position to intelligently evaluate

whether counsel's acts or omissions were within the range of reasonable competence. [Citations and footnotes omitted.] Thus, I cannot join in the majority's criticisms of those aspects of defense counsel's performance which he has never been provided an opportunity to explain, and I am concerned about the precedent set in holding an ex parte hearing two weeks after trial at which trial counsel was asked to explain his representation of defendant without any prior notice of the specific conduct in question.

Still, another doctrine—the plain-error rule—can be fairly invoked in this case and compels reversal. In general, a party cannot claim error predicated upon the admission of evidence unless the record shows a timely objection or motion to strike. SCRA 1986, 11–103(A)(1). The plain-error rule states, however, that "nothing in [Rule 11–103] precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." R. 11–103(D). As a result, evidentiary matters can be reviewed on appeal despite failure of trial counsel to bring them to the attention of the trial court. *See State v. Wall,* 94 N.M. 169, 608 P.2d 145 (1980); *State v. Lara,* 88 N.M. 233, 539 P.2d 623 (Ct.App.1975); *State v. Sanchez,* 86 N.M. 713, 526 P.2d 1306 (Ct.App.1974); 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[07] (1989). Plain error can even be noticed by an appellate court on its own motion, *see State v. Ogle,* 666 S.W.2d 58 (Tenn.1984), although I would be very reluctant to decide the issue without full briefing of the parties. Defendant has not explicitly claimed plain error; but both parties have briefed and argued the admissibility of the evidence of Mr. Crislip's statement and whether it caused prejudice to defendant. Therefore, there is no unfairness in deciding this case under the plain-error rule.

Courts apply the rule to reverse convictions only when the evidentiary error is very damaging:

"Plain error" has been characterized in various ways such as "grave errors which seriously affect substantial rights of the accused," "errors that result in a clear miscarriage of justice," errors that "are obvious or * * * otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Campbell,* 419 F.2d 1144 (5th Cir.1969). "It is settled law that the plain error rule should be applied with caution, and invoked only to avoid a miscarriage of justice." *United States v. Robinson,* 419 F.2d 1109 (8th Cir.1969).

*State v. Marquez,* 87 N.M. 57, 61, 529 P.2d 283, 287 (Ct.App.1974). The error in admitting Mr. Crislip's statement was such an error. At least five jurisdictions have ruled that admission of an accusation against a defendant by a non-testifying co-defendant can constitute plain error. *United States v. Key,* 725 F.2d 1123 (7th Cir. 1984); *United States v. Longee,* 603 F.2d 1342 (9th Cir.1979); *United States v. Morales,* 477 F.2d 1309 (5th Cir.1973); *People v. Hopkins,* 124 Ill.App.2d 415, 259 N.E.2d 577 (1970); *State v. Ogle.* Perhaps defense counsel's failure to object would bar reversal if there had been a tactical reason not to object. But there could not have been such a reason in the circumstances presented here.

Finally, it is worth noting that the trial court's observations during the ex parte hearing conducted after trial support the conclusion that the error here deserves to be labelled plain error. First, the trial judge stated that he was surprised that Mr. Crislip's statement came in without objection, because defense counsel had previously advised the court that he would be objecting to the statement. Defense counsel indicated that he did not believe that the statement in fact had come in. Something may have distracted counsel during the trial. In any case, the trial judge apparently thought that admissibility of the statement was plainly erroneous, but perhaps did not act on his own initiative because of surprise at defense counsel's failure to act. Second, the trial judge referred to Mr. Crislip's statement as "very damaging." Thus, the trial judge apparently believed that the admission of the statement by Mr. Crislip

was both plainly wrong and of critical importance.