691 P.2d 887

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Felix MARTINEZ, Defendant-Appellant.**

No. 7276.

Court of Appeals of New Mexico.

Oct. 23, 1984.

Certiorari Denied Dec. 3, 1984.

Paul G. Bardacke, Atty. Gen., Ida M. Lujan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Lynne Corr, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

HENDLEY, Judge.

Defendant appeals his second degree murder conviction. The five issues raised for reversal relate to 1) whether a witness was unavailable, 2) admission of conspiracy testimony, 3) hearsay exception, 4) severance and conflict, and 5) the death penalty qualification of the jury. Other issues raised in the docketing statement but not briefed on appeal are abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). We affirm.

Defendant, Lujan, and Sedillo were originally charged with capital murder arising out of the beating and stabbing death of fellow-prisoner Thompson at Camp Sierra Blanca on August 1, 1981. Defendant's first trial resulted in a mistrial because of a procedural error. His second trial resulted in mistrial as the result of a hung jury. Sedillo pled guilty to second degree murder, and at defendant's third trial testified that he (Sedillo) alone killed Thompson. Lujan was tried with defendant at the third trial and was acquitted. Defendant was found guilty of second degree murder.

### Unavailable Witness

Love was a prisoner on the night of Thompson's murder. He was one of the two prisoners who saw the beating administered to Thompson outside of the lodges. Love saw defendant and Sedillo kicking and punching Thompson in back of Bonito

Lodge. Love then saw defendant, Sedillo, and Lujan carry Thompson off. Shortly afterwards, Love looked out of his window in Desert Lodge and saw defendant hitting Thompson and Sedillo beating him with a pool cue. Defendant then came into Desert Lodge with blood on his arm and took a shower.

Love, who was in the penitentiary at the time, testified at the preliminary hearing in August 1981. Love was released in October 1981 and moved back to Oklahoma. He appeared for his deposition in January 1982 pursuant to the district attorney's request and an ordinary witness subpoena. *See* NMSA 1978, Civ.P.R. 45 (Repl.Pamp. 1980). He appeared for the first trial in February 1982 in the same manner. He appeared and testified in the second trial in March 1982. Again, his appearance was pursuant to request and a Rule 45 subpoena. In August of 1982, just prior to the third trial which began on September 7, the district attorney sent another Rule 45 witness subpoena to Oklahoma. Love's probation officer in Oklahoma served it on him. The prosecutor talked with Love twice, once on September 7 and once about ten days before that. Love was advised of his schedule and was told to pick up his tickets at the airport.

On September 8, after Love failed to arrive in New Mexico, the prosecutors began checking to see what had happened to him. The authorities in Oklahoma told the prosecutors here that Love had his own trial pending in Oklahoma. The prosecutors here had known about the Oklahoma charges since June. Love was to be tried on a misdemeanor charge, but because of the habitual offender statute, he was subject to a twenty-year sentence if found guilty. The attorneys in Oklahoma thought their trial would be continued so that Love could testify in defendant's case. The trial was not continued. Love was present during the morning of his first day of trial in Oklahoma, but he did not thereafter return.

The prosecutors here immediately prepared a subpoena pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, NMSA 1978, Sections 31–8–1 to –6 (Repl.Pamp.1984), and sent it to Oklahoma by Federal Express. The prosecutors also learned that there were outstanding warrants pending for Love's arrest in both New Mexico and Oklahoma. Prior to Love's nonappearance here, the prosecutors had no reason to believe, based on Love's three prior appearances, that he would not appear as scheduled. The prosecutors here did not avail themselves of the Uniform Act until Love had already become a fugitive.

The trial court found that Love was unavailable and, therefore, that his preliminary hearing testimony would be admissible under NMSA 1978, Evid. Rule 804 (Repl. Pamp.1983). The deposition testimony and testimony from the prior trial were made available to the defense because, had Love been present, defense counsel could have cross-examined on them. With certain exceptions, the preliminary hearing testimony was read to the jury. Counsel for defendant then presented Love's testimony from the second trial.

█ Defendant contends that the trial court erred in ruling Love to be unavailable. He claims that the admission of Love's prior testimony deprived defendant of his confrontation and due process rights. Initially, it should be noted that defendant's complaints about the adequacy of his earlier cross-examination of Love and the fact that his motives were different at the preliminary hearing are without merit. With regard to adequacy, the trial court recognized that certain matters were not developed by the defense during the earlier testimony and admitted the transcripts, with the express condition that the defense be allowed to cover these matters by extrinsic evidence. With regard to motive, *State v. Massengill,* 99 N.M. 283, 657 P.2d 139 (Ct.App.1983), holds that, as a matter of law, a defendant has the opportunity and a similar motive to develop testimony at a preliminary hearing as he does at trial. The requirements of Rule 804(b)(1) were

satisfied as to adequacy of opportunity and as to motive.

■ Defendant's confrontation issue is controlled by *State v. Martinez*, 99 N.M. 48, 653 P.2d 879 (Ct.App.1982). There, the court held that there is no denial of confrontation if the witness is unavailable and if the evidence admitted falls within a firmly rooted hearsay exception. If Love was unavailable, his former testimony falls within the firmly rooted hearsay exception of Rule 804 as former testimony. Thus, the only substantial issue raised, with regard to Love's testimony, is whether he was unavailable.

Rule 804(a)(5) provides that a declarant is unavailable if he "is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means." Our prior cases have insisted on strict compliance with the Uniform Act before an out-of-state witness may be declared unavailable under Rule 804(a)(5). *State v. Vialpando*, 93 N.M. 289, 599 P.2d 1086 (Ct.App. 1979). Use of "process" is limited to securing the presence of an in-state witness, and the Uniform Act has been considered "other reasonable means" for securing the presence of an out-of-state witness. *State v. Waits*, 92 N.M. 275, 587 P.2d 53 (Ct.App. 1978).

The question raised by this case is whether the Uniform Act must be used sufficiently in advance of trial to insure the witness's presence at the commencement of the trial or whether other reasonable means exist in certain cases. In *Waits*, the witness appeared at a preliminary hearing and then failed to appear, in response to an ordinary subpoena served out-of-state, for trial. The court held that "under the facts of [that] case," the Uniform Act had to be used. Here, the facts are different. The witness had responded to ordinary subpoenas three times and had confirmed that he was going to respond a fourth time the day before he was scheduled to arrive for the trial.

The case on which *Waits* relied, *Smith v. State*, 546 P.2d 267 (Okl.Cr.1976), implied that the result would have been different if the prosecutor had established a track record for the witness's voluntary appearance or if the prosecutor had the witness's recent personal assurance of appearing. *State v. Bey*, 217 Kan. 251, 535 P.2d 881 (1975), held that a witness's assurance of cooperation might make the subpoena procedure unnecessary. It also held that if subpoenaing would be futile, it was unnecessary. *See also State v. Ewing*, 97 N.M. 235, 638 P.2d 1080 (1982). *See generally* Annot., 3 A.L.R.4th 87 (1981).

We hold this case is distinguished from *Waits*. Good faith and due diligence are the standards under *Waits*. Defendant states that he does not "necessarily believe that the State acted in bad faith." We agree bad faith is not at issue under these facts. Whether the burden of showing unavailability has been met is discretionary with the trial court. *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979). The trial court did not abuse its discretion in ruling that the prosecutor, under the facts of this case, exercised due diligence.

**Conspiracy Testimony**

■ Lujan, defendant, and fellow-prisoner Mitchell were returned from Camp Sierra Blanca to the state penitentiary. Mitchell testified that he saw defendant and Lujan at the penitentiary after the incident. They discussed fixing up a statement to cover up and lie about what happened on the night of Thompson's death. Lujan and Mitchell got together in the library to fix up the statement. The essence of this statement was that Mitchell denied seeing or hearing anything untoward on the night of the murder and that the authorities had attempted to elicit false information from him through promises of early parole. In fact, Mitchell had seen defendant beating Thompson in the TV room while Lujan and Sedillo were standing at the doors. Mitchell had seen and heard Lujan telling other prisoners to go back to their rooms. He had heard defendant tell Thompson to go outside, and he heard them go outside. He had seen Lujan cleaning blood from the floor of the TV room.

The trial court admitted evidence of the activities at the penitentiary, as well as the prior statement, because it found defendant and Lujan conspired to prepare the statement. Defendant contends that the trial court's reliance on NMSA 1978, Evid. Rule 801(d)(2)(E) (Repl.Pamp.1983) was erroneous because there was no prima facie case of any conspiracy established independent of Lujan's acts and statements. *See State v. Sheets,* 96 N.M. 75, 628 P.2d 320 (Ct.App.1981). He also contends that admission of this testimony denied him his right to confront Lujan.

Defendant's only issue regarding Mitchell's statement was that conspiracy was not shown because the only evidence of it were some ambiguous remarks. We disagree.

■ Acts of co-conspirators are to be excluded only when those acts amount to assertions. *Sheets.* Thus, non-assertive acts are proper evidence upon which a court may find a prima facie case of conspiracy. In addition, defendant's out-of-court statements were admissible under Rule 801(d)(2)(A), and Mitchell's out-of-court statements were admissible under Rule 801(d)(1)(A) or (B).

The evidence, without Lujan's assertions, is as follows:

1. Mitchell received a write-up at Camp Sierra Blanca and was sent to the penitentiary. The first person he saw there was Lujan. He then saw defendant and Lujan together in the kitchen and again in the corridor.

2. In the corridor, in Lujan's presence, defendant said that the three of them should not get together because it would not look right.

3. Later, Lujan and Mitchell met in the library. Defendant was not there. Lujan typed and Mitchell signed the statement which said that Mitchell saw and heard nothing. The date on the statement is January 31, 1982.

4. Defendant's first trial ended in a mistrial on February 24, 1982. Mitchell's deposition had been taken on February 11, 1982. After the taking of the deposition

and after the declaration of the mistrial, defendant saw Mitchell, informed him of the mistrial, thanked him for his help, and said he believed they had the charges beat.

5. At some point defendant told Mitchell to memorize what was in the statement.

6. Mitchell's statement and deposition were similar to one another but different from the testimony Mitchell gave at trial.

■ This evidence, particularly defendant's statement that the three should not get together, followed by Lujan and Mitchell getting together to execute the statement, shows a combination between defendant, Lujan, and Mitchell to create and execute the false statement. *See State v. Johnston,* 98 N.M. 92, 645 P.2d 448 (Ct. App.1982). Because of this evidence of a conspiracy, even though Lujan was unavailable to testify, *see State v. Self,* 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975), the admission of the disputed evidence did not violate defendant's confrontation rights. *State v. Martinez.*

### Hearsay Exception

■ Garza, who also was a prisoner, was in the TV room with Thompson when the events leading to Thompson's murder began. Defendant came in and began talking to Thompson. Thompson had recently been assigned to be defendant's roommate and defendant did not want him. Defendant was cursing at Thompson and telling him to get out of his room. Defendant did not want any white men in his room and said he was going to "take Thompson out." Sedillo then came into the TV room and started poking Thompson with a safety pin and kicking him. Lujan was also in the TV room. Defendant told Sedillo, who in turn told Garza, to take care of the door, but Garza just went back to his own room. From his room, Garza heard screams. After about five minutes, Lujan came into Garza's room. This was apparently before the screams. When Lujan came in, Lujan was scared. Garza testified: "He [Lujan] said, 'They're going to rape him.' That they had taken him outside. And then I

said, 'No, they're going to kill him.' And then he added, 'I believe so.' "

■ Having found no conspiracy, at this early point in the trial, between Lujan, Sedillo, and defendant to murder Thompson, the court admitted the above statements under NMSA 1978, Evid. Rule 803(1) or (2) (Repl.Pamp.1983). Defendant contends that the statements were inadmissible under Rules 803(1), 803(2), and 801(d)(2)(E), and that admission of the statements denied him his confrontation rights. As discussed in the previous issue, Lujan was unavailable because he exercised his privilege not to testify. If the declarant is unavailable, there is no confrontation problem if the statements fit within a hearsay exception. *State v. Martinez.*

Rule 803(1) and (2) relate to present sense impressions and excited utterances. Subsection (1) excepts from the hearsay rule a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Subsection (2) excepts from the hearsay rule a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The operative portions of Lujan's statements about which defendant complains, *see State v. Self,* were: (1) they are going to rape him; (2) they are taking him outside; and (3) I believe they are going to kill him.

■ Defendant argues at length the purposes and assumptions behind Rule 803(1) and (2). New Mexico cases involving the application of the Evidence Rules here at issue include *State v. Case,* 100 N.M. 714, 676 P.2d 241 (1984); *State v. Robinson,* 94 N.M. 693, 616 P.2d 406 (1980); *State v. Perry,* 95 N.M. 179, 619 P.2d 855 (Ct.App.1980); *State v. Cozzens,* 93 N.M. 559, 603 P.2d 298 (Ct.App.1979); and *State v. Maestas,* 92 N.M. 135, 584 P.2d 182 (Ct. App.1978). From these cases, the following governing principles are apparent:

1. The admission of evidence, including the determination of whether foundational facts are present, is discretionary with the trial court. *Case; Perry; Maestas.*

2. Such discretion is wide. *Case; Robinson.*

3. Under Rule 803(2), the declaration should be spontaneous, made before there is time for fabrication, and made under the stress of the moment. *Maestas.* However, no particular amount of time lapse will render a statement admissible or inadmissible. *Robinson; Maestas.* As long as the statement is produced by the stress of the moment, it is admissible. *See Cozzens.*

4. Under Rule 803(1), the statement must be made during the event or immediately thereafter and the statement must describe or explain the event or condition. *Perry.* These requirements simply negate an apparent motive to lie.

Measured by these criteria, and without regard to the purpose for which the statements were introduced, the statements were within the court's discretion to admit. They were made immediately after the beating in the TV room and before the fatal beating outside which resulted in the screams. The commotion in the TV room was tumultuous, with cursing, yelling, fighting, and blood. Lujan was present during it, heard what happened, and cleaned up the blood. Regardless of the difficulties Garza had in describing Lujan's emotional state, Garza did testify that Lujan was scared.

Relevancy is also a requirement, however, and the purpose for which the statements were admitted raises a different set of concerns. Lujan's last two statements go primarily to Lujan's state of mind. Lujan's state of mind was an issue at defendant's trial. This was because Lujan was also on trial. As the state argues, Lujan's admissions are admissible against Lujan. Even if they were speculative on Lujan's part, his speculations, together with his acts of telling people to mind their own business and to leave the fighters alone, bore on his culpability as an accomplice.

In the trial court, the state's justification for offering the statements was to prove Lujan's intent. The state does not argue that the statements were admissible against defendant.

■ What, then, is the appropriate result when evidence admissible only against a co-defendant is admitted in a joint trial? One line of authority is to the effect that, when evidence is admissible for one purpose but not another, the court does not err in admitting the evidence and defendant's proper remedy is to request a limiting instruction. *See State v. ·Gilbert,* 98 N.M. 77, 644 P.2d 1066 (Ct.App.1982); *State v. Padilla,* 90 N.M. 481, 565 P.2d 352 (Ct.App. 1977); NMSA 1978, Evid.R. 105 (Repl. Pamp.1983).

NMSA 1978, UJI Crim. 40.08 (Repl. Pamp.1982) approves this practice. NMSA 1978, UJI Crim. 40.07 (Repl.Pamp.1982) dealing with statements made by a defendant *after arrest,* is a "do not give" instruction, designed to obviate a *Bruton* [*v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)] problem. *Bruton,* however, is distinguishable. *Compare Bruton with Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), and *see State v. Urioste,* 94 N.M. 767, 617 P.2d 156 (Ct.App.1980). Weinstein notes that courts only apply the *Bruton* rule, that a limiting instruction will not cure the prejudice, to those situations of confessions unerringly and devastatingly referring to the defendant. 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2) (E)[01] (1984). In this case the nebulous "they" did not so refer to defendant. Others were present. Accordingly, the limited admissibility of Lujan's statements could have been cured by instruction. Having failed to request one, defendant cannot now be heard to complain. *See State v. Ortiz,* 88 N.M. 370, 540 P.2d 850 (Ct.App. 1975).

### Severance and Conflict

■ Defendant contends that it was error for the trial court to continue the joint trial of defendant and Lujan once Lujan's out-of-court statements were presented to the jury and once the court was notified that a conflict arose between defense counsel, who were members of the same firm. The strict severance issue concerns the admission of Lujan's statements. Lujan's statements to Mitchell would have been admissible in a separate trial, and Lujan's statements to Garza were susceptible of cure by instruction. Thus, a severance was not necessary because of the introduction of statements.

■ Nor was any action required to be taken because of an alleged conflict of interest. Counsel for defendant and counsel for Lujan became partners shortly before the trial. Because they were going to present a unified defense, such that no actual conflict of interest was apparent, they secured waivers of any appearance of conflict prior to trial. While it is true that at trial both defendant and Lujan were represented by the same attorney, NMSA 1978, Code of Prof.Resp. Rule 5–105(D) (Cum.Supp.1984) (members of the same firm are treated as one attorney for conflict of interest purposes); *see State v. Martinez,* 100 N.M. 532, 673 P.2d 509 (Ct. App.1983); *cf. State v. Hernandez,* 100 N.M. 501, 672 P.2d 1132 (1983), there is nothing prohibiting dual representation as long as there is no actual conflict of interest adversely affecting the lawyer's performance. *State v. Robinson,* 99 N.M. 674, 662 P.2d 1341 (1983).

Here, the defendants had a unified defense throughout this trial. Throughout this long trial, defendant points to only two instances where his tactics and those of Lujan's counsel differed. First, he asserts that counsel had different tactics regarding the prior testimony of Love. Second, counsel had different tactics regarding whether Lujan should testify.

With regard to Love, defendant wanted only the second trial testimony used. Lujan wanted only the preliminary hearing testimony used. Both defendants' posi-

tions in this regard were clearly presented to the trial judge, who correctly ruled that both the preliminary hearing testimony and the trial testimony were admissible.

With regard to Lujan, defendant wanted him to testify to explain the remarks he made to Garza. Lujan did not want to testify because testifying would open him up to adverse impeachment. Lujan did not testify. Once Lujan decided not to testify, there was no way defendant could get him to testify, separate counsel or not.

Thus, this case is like *Patterson v. State*, 81 N.M. 210, 465 P.2d 93 (Ct.App.1970), where the presence of separate counsel would not have made a difference. There was no conflict of interest adversely affecting defendant's counsel's performance. *Robinson.*

**Death Penalty Qualification**

 The issue concerning death penalty qualification of the jury has been answered adversely to defendant by our supreme court in *State v. Trujillo*, 99 N.M. 251, 657 P.2d 107 (1982), and subsequent cases. *E.g. State v. Gilbert*, 100 N.M. 392, 671 P.2d 640 (1983). This court is bound by those rulings. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

Affirmed.

**IT IS SO ORDERED.**

BIVINS and MINZNER, JJ., concur.