738 P.2d 914
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John W. RAMMING,
Defendant-Appellant.**

**No. 9277.**

Court of Appeals of New Mexico.

May 12, 1987.

Certiorari Denied June 17, 1987.

Nancy Hollander, John W. Boyd, Freedman, Boyd & Daniels, P.A., Albuquerque, for defendant-appellant.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Convicted of multiple counts of kickbacks, fraud, racketeering and conspiracy, defendant appeals. During the pendency of the appeal, then Governor Toney Anaya issued an executive order granting defendant a pardon for all counts except one count of conspiracy. Defendant has expressly abandoned his appeal as to all counts for which he received a pardon. Thus, he appeals from his conviction for conspiracy; any appeal from other convictions is dismissed. We affirm the conviction and sentence for conspiracy.

We state the facts and discuss (1) preliminary matters; (2) whether the trial court erred in failing to grant defendant a severance; (3) whether reversal is required because of a prosecutor's comment during closing argument; (4) whether the trial court erred in admitting summary documents into evidence; and (5) whether defendant's issue concerning the trial court's communication with a prospective juror requires reversal.

FACTS

The evidence reflects that in 1984 and 1985 a contractor, Richard Rowand, and his company, CRW Development Corporation, received $2,800,000 in state money for construction of various disaster projects. An engineer, Levi Valdez, and his company, Valdez Engineering Company, also re-

ceived state money for work done on some of the projects. The monies were provided after the governor issued disaster declarations.

The evidence showed that each of the projects had its own problems. Some were not genuine disasters or emergencies. In some, there were excessive change orders. In some, the work done was unnecessary; in others, it was simply shoddy; in others, it was not done at all. No one seems to dispute that Rowand cheated the state out of hundreds of thousands of dollars.

The proceedings below concerned defendant, the governor's authorized representative, who recommended to the governor when and where to issue disaster declarations, and Pete Mondragon, who worked in the Civil Emergency Preparedness Division, administering the disaster funds. Rowand was defendant's friend; Valdez was Mondragon's friend.

During the time the contracts were being awarded for the projects and the work was being performed, defendant received $15,000 from Rowand. A friend of defendant received $14,000. Defendant characterized these as loans. During the same time, Mondragon and his daughters received a number of vehicles from Rowand. Mondragon, too, characterized them as loans.

The state had charged that each defendant aided and abetted the frauds committed in connection with each project. The state also charged bribery, kickbacks, racketeering and conspiracy. Defendant and Mondragon were tried together. Each defendant was convicted of fraud in connection with all projects but one; each defendant was also convicted of conspiracy, racketeering and bribery or kickbacks or both.

## 1. *Preliminary Matters*

Defendant's original docketing statement raised thirteen issues and some of those had subissues. In addition, defendant has amended his docketing statement and attempted to amend it to raise other issues. We recite the procedural posture of the appeal because our discussion of it disposes of all issues except the four we discuss later.

In response to the original docketing statement, this court issued a calendaring notice proposing summary affirmance. Defendant filed a memorandum in opposition and motion to amend the docketing statement. The memorandum in opposition abandoned all original issues except for three: (1) the severance issue; (2) the issue concerning the summary documents; and (3) the issue concerning the closing argument comment. *See State v. Martinez*, 97 N.M. 585, 642 P.2d 188 (Ct.App.1982). The memorandum also argued a fourth issue (concerning the racketeering instruction) raised in the motion to amend, which we granted.

Our second calendaring notice also proposed summary affirmance. In response, defendant filed a second motion to amend the docketing statement to raise an issue concerning the alleged erroneous admission into evidence of hearsay. Specifically, defendant alleged that the trial court erred in allowing one of Mondragon's daughters to testify that Rowand and Mondragon asked her to say that Rowand gave her a vehicle during an affair she had had with him. We denied the motion to amend because the rules do not contemplate that a defendant may amend his docketing statement to raise a new issue each time this court grants a previous motion to amend and proposes summary affirmance. *See State v. Smith*, 102 N.M. 350, 695 P.2d 834 (Ct. App.1985). After receiving defendant's memorandum in opposition to our second calendaring notice, we reassigned this case to the limited calendar.

Following our assignment of this case to the limited calendar, defendant filed yet another motion to amend his docketing statement, together with a motion to file a supplemental transcript of the proceedings relating to the issue with which he wanted to amend his docketing statement at that time. Appellate counsel, who was different than trial counsel, had learned that, after the jury was selected, but before it was sworn, a juror had had a conference with the trial court.

At the time defendant filed his motion to amend the docketing statement to raise the issue of the trial court's conversing with the juror in defendant's absence, and his motion for a supplemental transcript, this court entered an order providing that the transcript could be filed conditionally and that defendant could brief the issue of whether the trial court erred by holding the conference. This order reserved deciding whether to allow the docketing statement amendment and the filing of the supplemental transcript until the time the case was finally decided. Our order setting forth this procedure stated the court was concerned that allowing the docketing statement amendment and supplemental transcript would contravene cases holding that unauthorized transcripts are not entitled to consideration, *State v. Robertson*, 90 N.M. 382, 563 P.2d 1175 (Ct.App.1977), and holding that the appellate rules do not allow new appellate counsel to pick through the transcript for possible error, *State v. Jacobs*, 91 N.M. 445, 575 P.2d 954 (Ct.App.1978).

Defendant's brief argues that our denial of the docketing statement amendment to allow the hearsay issue and our potential denial of the docketing statement amendment to allow the juror issue will deny him his right to due process of law and effective assistance of counsel. Because the transcript has been filed and because both defendant and the state have briefed the juror issue on the merits, we have considered the issue on its merits. *See* "5. *Communication with Prospective Juror*". Further, the case we rely on for our decision on the severance issue also answers defendant's hearsay contention. *See* "2. *Severance*". Because we have decided the merits of the issues and that decision is adverse to defendant, we need not decide the general issue of whether a docketing statement amendment and supplemental transcript request should be granted under circumstances such as are present here.

We note, however, the rules contemplate that meritorious issues will have been raised in the trial court or at least recognized by counsel at the time the docketing statement or initial memorandum in opposition is filed and, accordingly, will be contained in the docketing statement or the first amendment thereto. Indeed, in this case, defendant's new juror issue was not preserved, because it was not raised in the trial court and because it is not within that category of issues that can be raised for the first time on appeal. His hearsay issue is dispositively answered by existing New Mexico case law. The rules do not contemplate that such issues will be the subject of successful motions to amend. *State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct.App. 1983). There is nothing unfair or unconstitutional about denying defendant the right to raise non-meritorious issues. *See Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

Other issues, which were listed in the docketing statement but not briefed, are abandoned. *State v. Romero*, 103 N.M. 532, 710 P.2d 99 (Ct.App.1985). Finally, defendant expressly abandons his issue concerning the racketeering instruction because of his pardon on the racketeering count. Thus, defendant agrees with the state that the appeal is moot as to the convictions for which defendant was pardoned. Because of this, we deny defendant's motion to vacate and remand the pardoned counts.

### 2. *Severance*

Defendant contends his trial should have been severed from that of co-defendant Mondragon. Defendant moved for a severance on a number of grounds and originally raised those grounds in his docketing statement and memoranda in opposition. Now, however, in his brief, he limits his argument to one specific contention. Thus, grounds other than the one specifically addressed have been abandoned. *State v. Romero.*

Defendant's specific argument is that the trial court should have granted a severance when defendant objected to the testimony of Mondragon's daughter, Monica Romero. The substance of that testimony was that Mondragon and Rowand asked her to lie

about the circumstances surrounding her receipt of a vehicle from Rowand. The vehicle was titled in her name. They asked her to tell investigators that the gift of the vehicle was a result of an affair she had had with Rowand.

Following a bench conference on this issue, the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, the court instructs you that the testimony being elicited from this witness may seem to bear on one or more of the defendants in the case or may seem to focalize principally on one. In any event, all of the evidence is subject to connection and further instruction by the court at a later time, and this evidence will be considered by you, together with all the other evidence in the case, for such weight as you may choose to give it, bearing on the cases of any of the defendants herein. You may proceed.

Defendant did not request a limiting instruction.

Defendant contends the evidence was hearsay, inadmissible against him, and that the instruction erroneously allowed the jury to consider Monica's evidence against him. The state contends the instruction told the jury to consider Monica's evidence against her father as bearing only on her father. We need not discuss whether the evidence was hearsay or whether the instruction was sufficient because, even assuming that the evidence was hearsay and the instruction insufficient, defendant is not entitled to a severance under the circumstances of this case.

In *State v. Martinez*, 102 N.M. 94, 691 P.2d 887 (Ct.App.1984), this court considered a similar issue. Defendant there had raised a hearsay issue because evidence admissible against a co-defendant was admitted in their joint trial; he also raised a severance issue based on this evidence. In that case, we held that an admonitory instruction could cure the admission of hearsay statements of one defendant as long as the hearsay did not unerringly and devastatingly refer to the complaining defendant. Because defendant there did not request an instruction, we held that he could not be heard to complain. We also held that defendant's severance issue was answered on the same ground, i.e., that a severance was not necessary when the introduction of inadmissible statements could be cured by instruction. Here, because defendant did not request a limiting instruction, he cannot be heard to complain. *Id.*

Defendant relies on federal cases for the propositions that the trial court's instruction was insufficient to cure the alleged error and that it is the state's or the trial court's burden to give a correct instruction. These cases, particularly *United States v. Radeker*, 664 F.2d 242 (10th Cir.1981), relied upon for the latter proposition, are not persuasive. First, *United States v. Radeker* involved the admission of evidence pursuant to the co-conspirator section of Fed. R.Evid. 801 and the federal rule that the trial court has to make particular findings when admitting evidence pursuant to that section. Our research reveals no similar rule requiring express findings in New Mexico. Second, to the extent that *Martinez*, 102 N.M. 94, is inconsistent with *United States v. Radeker*, we follow *Martinez*.

In addition, the evidence did not point unerringly to defendant's guilt nor was it devastating in its effect against defendant. First, evidence of Mondragon's crude scheme was not directly inculpatory as to defendant. Second, in contrast to Mondragon receiving vehicles in the names of others and attempting to further hide his receipts, the evidence was that defendant openly received money in the form of a loan upon which he paid interest. Defendant's counsel specifically pointed out this contrast to the jury during his closing argument.

Moreover, in addition to *Martinez*, 102 N.M. 94, 691 P.2d 887, a case we believe directly answers defendant's severance contention adversely to him on the basis that the evidence that allegedly "spilled over" could have been cured by instruction, we would arrive at the same result utilizing ordinary principles of appellate review ap-

plicable to severance issues. Defendant's brief recognizes that "[a]ppellate courts unanimously grant trial judges broad discretion in granting or denying motions for severance. *See, e.g., State v. Baca,* 85 N.M. 55, 508 P.2d 1352 (Ct.App.1973)." He also recognizes that "[i]t is undeniable that almost all appellate decisions which address complaints of prejudicial spillover affirm trial courts' denials of severance."

▮ Thus, the standard of review applicable to a severance issue is exceedingly narrow. The essence of such review involves the question of whether, due to the joint trial, there is an appreciable risk that the jury convicted for illegitimate reasons. *See State v. Segotta,* 100 N.M. 18, 665 P.2d 280 (Ct.App.), *rev'd on other grounds,* 100 N.M. 498, 672 P.2d 1129 (1983). Because, as explained above, the evidence complained of was not devastating in its effect against defendant and because the evidence was one small part of a six-week long trial, we cannot say the effect of the evidence was so significant that the trial court abused its discretion in failing to grant a severance. Accordingly, we affirm the trial court on this issue.

### 3. *Closing Argument Comment*

Defendant complains of a comment made by the prosecutor during his rebuttal closing argument to the effect that defendant and Rowand made a million dollars on this criminal enterprise. There was no evidence that defendant made a million dollars; there was only evidence that defendant received $15,000. Defendant contends the prosecutor's erroneous comment amounted to testimony by the prosecutor and the expression of a personal opinion. We disagree.

▮ We must consider the comment in the context in which it was made, *see State v. Musgrave,* 102 N.M. 148, 692 P.2d 534 (Ct.App.1984) (motion to dismiss properly denied because comments were unintentional), and we also consider the timeliness of defendant's objection. We do not consider timeliness for the purpose of barring defendant's issue, *see State v. Carmona,* 84 N.M. 119, 500 P.2d 204 (Ct.App.1972),

but rather for the purpose of evaluating the trial court's response to the objection. The trial court ruled on the merits of defendant's motion and so do we. *State v. Diaz,* 100 N.M. 210, 668 P.2d 326 (Ct.App. 1983).

▮ The context in which the comment was made reflects that the prosecutor was discussing the liability of co-defendant Mondragon. The prosecutor was pointing out that, although Mondragon did not make a lot of money from the enterprise, he did facilitate it. This was in contrast to defendant and Rowand, who, according to the prosecutor, did make a lot of money. It is a fair inference from the evidence that Rowand did make a lot of money. He received close to $3 million in contracts and substantial amounts of the billings were for services not performed or goods not worth the amount charged for them. However, defendant is correct that there is no evidence that he personally made a million dollars from the enterprise.

The comment was made midway through the rebuttal closing argument, following which the trial court excused the jury for the day. The next morning, following some discussion on matters involving exhibits that would go to the jury, but before the jury actually retired to deliberate, defendant made his objection to the comment and moved to strike it. The trial court denied the motion.

We do not find reversible error on this issue because we find that the trial court could have viewed the comment as too insignificant to warrant calling back the jury for special instruction on it. There were inferences from the evidence that defendant benefitted from Rowand's money. Defendant and Rowand were friends and spent time together. Another of defendant's friends received monetary favors from Rowand. To have instructed the jury accurately regarding the comment would have involved more than a mere admonition to simply disregard the comment.

The comment was one sentence in a discussion that focused on the culpability of another defendant. The magnitude of the

improper comment simply does not rise to the level of reversible error when compared to comments in other cases in which we have held that reversible error was present. *See, e.g., State v. Henderson,* 100 N.M. 519, 673 P.2d 144 (Ct.App.1983) (prosecutor told lengthy, supposedly true story of another defendant that was not based on any evidence in the case and only served to prejudice defendant); *State v. Diaz* (prosecutor referred to his own authority, made derogatory and abusive remarks about defendant, and continually misstated the law). The one brief comment in this case did not render defendant's six-week trial unfair. *Cf. State v. Clark,* 105 N.M. 10, 727 P.2d 949 (Ct.App.1986) (error, if any, in prosecutor's three comments was harmless, where trial court sustained objections to each one and admonished jury as to last two).

#### 4. *Summary Documents*

During the trial, the state introduced summaries of telephone records through an investigator of the attorney general's office. This witness testified, and the parties stipulated, that certain numbers in the governor's office were assigned to defendant. The parties also stipulated that the telephone records upon which the summaries were based were true and correct records of telephone subscribers' names and calls made. Over 300 telephone calls were made between the particular telephone numbers.

Defendant contends that summaries of telephone records should not have been admitted into evidence because they were irrelevant and more prejudicial than probative. He contends they were irrelevant because there was no evidence that defendant himself actually made or received any of the calls. It is undisputed that the calls were made to and from defendant's numbers. Defendant also contends that the error was magnified because calls on certain dates were highlighted. The purpose of the telephone records was to show defendant's many contacts with Rowand.

■ Admission of evidence is discretionary with the trial court. *State v. Martinez,* 102 N.M. 94, 691 P.2d 887. Although the evidence must in some manner

be connected with defendant, *State v. Young,* 103 N.M. 313, 706 P.2d 855 (Ct. App.1985), it is not necessary that it relate directly to the facts in controversy. *Id.* Evidence may be relevant even if it is circumstantial. Doubts concerning the connection of the summaries with this case go to the weight of the evidence, not to their admissibility. *State v. Copeland,* 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986); *State v. Belcher,* 83 N.M. 130, 489 P.2d 410 (Ct.App. 1971). The fact that all the calls were made to and from defendant's numbers and other numbers connected to the case made them relevant. The fact that the calls occurred at times that were associated with the bribes, kickbacks and contracts awarded Rowand also makes the evidence relevant.

■ This evidence reflects, circumstantially, that during the relevant period Rowand called a number specifically assigned to defendant at the governor's office 77 times; the general number for the governor's office 45 times; defendant's Santa Fe residence 49 times; and defendant's Taos residence 24 times. These calls, together with calls to Rowand's number from numbers associated with defendant, totalled 337 calls for a total of 960 minutes. We agree with the state that the number of calls, circumstantially connecting defendant with Rowand at critical times, has evidentiary value. The fact that the evidence prejudiced defendant is not grounds for excluding it. *State v. Hogervorst,* 90 N.M. 580, 566 P.2d 828 (Ct.App.1977). Finally, defendant cites no authority for the proposition that it was improper to allow the witness to highlight the exhibit. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984). No error is shown in this issue.

#### 5. *Communication with Prospective Juror*

■ Defendant claims that voir dire of a juror outside his presence denied him a fair trial. This issue arose after the jury was selected, but before it was sworn, when one juror wanted to tell the trial court that she feared the other jurors were

not intelligent enough to decide the case. At this point, defendant had exhausted all of his peremptory challenges. In the presence of all counsel and defendants, and before anyone knew what the juror wanted, the participants decided that only the trial court and counsel would talk with the juror. This was so that the juror would feel free to speak her mind. After the trial court and counsel questioned the juror and ascertained her concern, and were satisfied this would not affect her ability to serve, all counsel agreed that they still wanted this juror to sit on the jury. Defendant voiced no objection to the procedure followed, but now claims there was error of such proportions that no objection was required.

Defendant relies on *State v. Garcia*, 95 N.M. 246, 620 P.2d 1271 (1980), for the proposition that a defendant has the right to be present during all stages of the trial, including the selection of the jury in chambers. We have no disagreement with the law set forth in *Garcia*, but believe it is inapplicable here for two reasons. First, *Garcia* involved the selection of the jury whereas, here, defendant agrees that the jury had already been selected. Defendant acknowledges that he had exhausted all of his peremptory challenges by the time of the conversation. Nonetheless, he contends, without citation to authority, *see In re Adoption of Doe*, that he could have challenged the juror for cause based on her answers to questions during the interview. Because of the lack of citation, we do not review this contention further. *Id.* Defendant's only reason for belatedly wishing to be present during the conversation is so that he could "assess any 'negative visceral reaction' he felt toward the juror, to consult with and advise his counsel, and to challenge the juror for cause based on her answers." We know of no authority that would allow a defendant to challenge a juror for cause for this reason.

Second, in *Garcia*, the defendant objected to his absence whereas, here, it appears that defendant agreed to his absence for the purpose of encouraging open communications. To overcome his lack of objection, defendant relies on a series of cases involving communications with actual jurors. In a line of cases culminating with *Hovey v. State*, 104 N.M. 667, 726 P.2d 344 (1986), our courts have held that it is improper for a judge to communicate with the jury about the issues in the case in the absence of defendant and that, when such happens, a presumption of prejudice arises, which the state has the burden of overcoming, regardless of defendant's failure to object.

In *Hovey*, and the cases it cites, the communications occurred during deliberations and involved matters concerning the deliberations, directly bearing on the issues in the trial. The cases obviously reflect the sacrosanctity of the jury's deliberative process. *See State v. Coulter*, 98 N.M. 768, 652 P.2d 1219 (Ct.App.1982) (presence of alternate juror during jury deliberations created presumption of prejudice, which the state failed to overcome). On the other hand, when communications occur prior to trial, a different analysis is used. *See State v. Henry*, 101 N.M. 277, 681 P.2d 62 (Ct.App.), *rev'd on other grounds*, 101 N.M. 266, 681 P.2d 51 (1984) (possibility of invited error and harmlessness).

We believe this case is controlled by *Henry* and not by *Garcia* or *Hovey*. Defendant was personally aware that the juror wanted to talk, and was present and did not object when the decision was made for counsel and the trial court to talk with the juror. The subject of the conversation, although certainly bearing on the trial, did not involve any specific issues. Both counsel, by their remarks after the conversation, expressed satisfaction with the jury and with this particular juror. Defendant could have done nothing about this juror in any event. Thus, we view error, if any, in conversing with the juror in the absence of defendant as both harmless and invited.

Defendant also contends that additional error was committed when the trial court apparently conversed with the juror before counsel arrived. We do not know whether this was while counsel were filing into the room or earlier, perhaps when the trial court found out that the juror wanted to talk. We know about this conversation because the trial court mentioned on the

record that the juror had told him that she did not know the jury had been "finalized."

We disagree with this final contention for two reasons. First, we see nothing improper for the trial court, in the absence of defendant or counsel, to ascertain what the juror wants to talk about. *State v. LaPierre*, 39 N.J. 156, 188 A.2d 10, *cert. denied sub nom., Bisignano v. New Jersey*, 374 U.S. 852, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963). Second, the record is less than clear as to whether counsel were in the room during the conversation. In an issue such as the one under consideration, the record must affirmatively show absence. *State v. Hinojos*, 95 N.M. 659, 625 P.2d 588 (Ct.App.1980).

## CONCLUSION

The conviction and sentence for conspiracy are affirmed. The appeal from any other conviction is dismissed.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.