This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                    **NO. 29,868**

**ARMANDO VASQUEZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Hector H. Balderas, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

{1} This case returns to us on remand from the Supreme Court to consider the case on its merits. *See State v. Vasquez*, 2014-NMSC-010, ¶¶ 2, 34, 36, 326 P.3d 447.

{2} The State appeals from an order of the district court that excluded testimony of the complaining witness and her mother. For the reasons that follow, we affirm the district court.

**I.    BACKGROUND**

**A.    Facts and Procedural History**

{3} The facts are undisputed by the parties. Armando Vasquez (Defendant) was accused of criminal sexual contact of the complaining witness (D.U.), a minor, in addition to other charges.  According to the State, her mother observed physical injuries to D.U. when D.U. told her of the abuse, and was present on at least one occasion when Defendant acknowledged his conduct toward D.U.  Both were regarded by the State as critically important witnesses, without whose testimony the State could not proceed to trial. Despite their importance to the case, Mother was never served with a subpoena for interviews or trial, and D.U. never appeared for an interview or trial despite being subpoenaed, albeit being served later than permitted by court rule.

{4} The State had considerable trouble from the earliest dates of the case in obtaining the cooperation of D.U. and her mother.  After a meeting in early December

2008 with her mother, D.U. and her mother did not appear for a January appointment with the prosecutor, nor did they respond to telephone calls from the district attorney thereafter. Throughout March 2009, the State made not less than seven attempts to contact D.U. and her mother without success. In May 2009, D.U.'s mother answered a telephone call from the district attorney's office, identifying herself on the telephone, but "stated she did not have a daughter named [D.U.] and hung up" when the district attorney office's employees identified themselves. A district attorney investigator and the prosecutor stopped by D.U.'s house about this time and, though they heard music that stopped when they knocked on the door, no one answered.

{5} From his arrest on September 8, 2008, through the August 31, 2009 trial date, Defendant remained in custody. The State filed its witness list on October 21, 2008, listing three witnesses: D.U., her mother, and her grandmother, who was married to Defendant. The notice listed the three witnesses' address as "c/o DA's Office." The defense had requested witness interviews of the DA in January, April, May, and June 2009. No interviews were set. In June, the State responded to another defense request for interviews, stating that it would be necessary for the district attorney to subpoena D.U. and her mother. No interviews were set. A defense request for the witnesses' addresses in order to subpoena them for an interview of its own drew a

response from the State that the subpoenas would have to come from the district attorney's office. No interviews were set.

{6} Nearly six months after arraignment, on March 3, 2009, the State filed for its first extension of time under Rule 5-604 NMRA[1], alleging specifically that "pretrial interviews still need to be conducted." No interviews were scheduled through June 2009, when the State requested a second extension, again alleging that interviews needed to be conducted. The State obtained the extension of time to September 8, and the trial was set for August 31, 2009.

{7} The State's efforts for further contact with the witnesses lapsed until August when the district attorney's office resumed trying to get in contact with D.U. and her mother. On August 12, 2009, the State filed two notices of statements for D.U. and her mother to be held at the district attorney's office on August 26, 2009, three business days before trial. No indication that they were served with subpoenas appears in the record. The prosecutor and a DA investigator finally found D.U. at her school on August 24. During that contact, D.U. told the prosecutor and investigator that the case had caused problems between her family and her that she did not like. D.U. was personally served at that time with a subpoena to appear on August 26 for

---

[1]In *State v. Savedra*, 2010-NMSC-025, 148 N.M. 301, 236 p.3d 20, our Supreme Court withdrew the six-month rule provisions set forth in Rule 5-604 (B)-(E). This withdrawl was effective for cases pending as of May 12, 2010. The 2011 amendment to Rule 5-604 codified the rule stated in *Savedra*. Rule 5-604 NMRA comm. cmt.

the interview and also for trial on August 31. There is no record of a subpoena or notice of the interview ever being served on her mother, although D.U.'s mother's subpoena for trial was posted on the door of her house on August 27 with a note inscribed to call the prosecutor "if you think you will not be able to make it to the trial."

{8}    Neither D.U. nor her mother appeared at the district attorney's office on August 26 for the scheduled interviews. On August 27, D.U.'s sister was served at D.U.'s house with another trial subpoena for D.U.. On that date, D.U.'s mother gave a note to the principal at the school, stating her displeasure with attempts to contact D.U. at school and requesting that she not be taken out of class or off the school grounds without D.U.'s mother being present.

{9}    Defense counsel and the prosecutor agreed to attempt another interview of D.U. on Friday, August 28. The prosecutor arrived at D.U.'s school at 10:00 a.m. with an investigator. When she was taken to the school's office, D.U. had a telephone conversation with her mother, who did not want her to be interviewed, and she was returned to class. Upon defense counsel's arrival at 10:30, D.U. refused to return to the office to be interviewed, and the defense counsel had no contact with her. The attorneys left the school at approximately 11:30, and Defendant promptly filed a motion to exclude D.U.'s and her mother's testimony.

4

## B. The District Court Proceedings and Order

{10} At 2:05 p.m. that Friday afternoon before the Monday trial, the district court convened an emergency hearing at Defendant's request. Defendant made an oral motion to the district court to exclude D.U. and her mother as witnesses in the case, citing a failure of the State to produce the witnesses. Defense counsel pointed out that it was the afternoon before trial, and the State had not yet made D.U. available. He stated that to go to trial without first interviewing D.U. would put the defense at a disadvantage and would result in unfair prejudice. The prosecutor argued that it had complied with its duty to make D.U. available at the high school and that it was her refusal to participate, not its actions, that rendered her unavailable. The State responded with a request for an order to show cause hearing on a later date to be directed at D.U. and her mother as a "less severe alternative" than exclusion to ascertain why they had not appeared in response to the subpoenas.

{11} After hearing from the parties, the district court discerned the history of requested interviews, and the State's proprietary treatment of its witnesses, both on its witness list and in its insistence that the witnesses be contacted through its office. The district court held that "[w]hen the [district attorney's] office takes that posture, they take the responsibility to provide [the witnesses] in a timely manner. That not

5

having been done, any witness not provided for interviews by today will be excluded from testifying next week." It granted the motion. The district court specifically recognized that had there been issues in securing the witnesses's interviews, including failures to appear in January, the State could have referred the matter to law enforcement, and "there [had] been ample opportunity for motions or subpoenas, [but] not on the Friday afternoon before trial is scheduled." The prosecutor agreed with the district court's characterization of the facts. The district court did not rule on the State's motion for an order to show cause that Friday afternoon, but denied it on Monday, the morning of trial, after D.U. and her mother had failed to appear for the trial.

{12}     Prior to the trial convening on Monday, August 31, 2009, the district court entered a written order, stating:

> THIS COURT, being fully informed and after hearing argument by the parties, does hereby grant defendant's oral motion to exclude the state's witnesses that were not made available for interviews and denies the state's oral motion for a show cause hearing. In so ordering, the Court finds:
>
> 1.   The defendant was arraigned on the above charges on September 8, 2008 and has been in custody since that date.
>
> 2.   The defendant requested interviews of the state's witnesses for several months [preceding] trial.
>
> 3.   The address of several of the state's witness was listed on the state's witness list as "care of the D.A.'s office";

6

4.  The state knew or should have known that the state's witnesses would be difficult to procure and thus complying with the defendant's several requests for pre-trial interviews would be difficult to comply with;

5.  Though judicial remedies exist which may have allowed the state to procure the witnesses—such as issuing subpoenas, requesting a show cause hearing, requesting material witness warrants, etc.—the state failed to take advantage of such remedies in a timely ma[nn]er;

6.  The state failed to provide [D.U.] or [her mother] for interviews;

7.  That the state waited until the day before trial to ask[] for judicial intervention in securing the state's witnesses for trial;

8.  That the proper remedy for the state's failure to provide timely and adequate discovery was exclusion of the state's witnesses that were not made available for interviews.

THEREFORE, THE COURT does hereby exclude from trial the testimony of [D.U.] and [her mother] because the state failed to comply with New Mexico Rules of Criminal Procedure governing discovery.

THE COURT FURTHER ORDERS that the state's motion to have a hearing to show cause as to why [D.U.] failed to comply with the subpoena is denied because it is untimely.

{13} Monday morning, the case was called for trial. D.U. and her mother did not appear, and the prosecutor asked the district court to reconsider its ruling excluding their testimony. The district court declined, basing its decision on its assessment of the State's lack of vigorous pursuit of the case, the lack of timely notice and

7

subpoenas to the witnesses and that the Defendant had remained in custody charged with serious crimes. The district court stated that it would vacate the trial setting and begin the next trial on its trailing docket that day. The State took this interlocutory appeal, which we granted.

## II. DISCUSSION

### A. Standard of Review

{14} Our Supreme Court has declared that "a court's inherent power is at the core of judicial authority," including the "inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket[ and] promote judicial efficiency[.]" *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶¶ 11, 20, 120 N.M. 1, 896 P.2d 1148 (internal quotation marks and citation omitted). "The decision to exclude evidence calls on judicial discretion to weigh all the circumstances, including willfulness in violating the discovery rule, the resulting prejudice to the opposing party, and the materiality of the precluded testimony." *State v. Guerra*, 2012-NMSC-014, ¶ 33, 278 P.3d 1031. We consequently review the exclusion of witnesses as sanction for a failure to provide discovery for an abuse of discretion. *State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25. We are obligated to view the evidence and the reasonable inferences arising from it in the light most favorable to the district court's decision.

8

*State v. Candelaria*, 2008-NMCA-120, ¶ 12, 144 N.M. 797, 192 P.3d 792. If the district court may have decided the matter either way in a matter within its discretion, we will affirm. *State v. Ferguson*, 1990-NMCA-117, ¶ 15, 111 N.M. 191, 803 P.2d 676. We can only reverse if we characterize the district court's ruling as "clearly untenable or not justified by reason." *Candelaria*, 2008-NMCA-120, ¶ 12 (internal quotation marks and citation omitted).

{15} The assessment of sanctions "depends . . . upon the extent of the Government's culpability . . . weighed against the amount of prejudice to the defense." *State v. Chouinard*, 1981-NMSC-096, ¶ 12, 96 N.M. 658, 634 P.2d 680. Exclusion of witnesses is proper in instances where the state's conduct is especially culpable, "such as where . . . all access to the evidence is precluded by State intransigence." *Harper,* 2011-NMSC-044, ¶ 17. A district court's exclusion of witnesses is within its discretion if the violation was willful, the opposing side was rendered unable to interview and prepare for the testimony, and the lack of the testimony would be prejudicial to a defendant's ability to confront and cross-examine a state's key witness. *Guerra*, 2012-NMSC-014, ¶ 33. The prejudice we look for is limited to an adverse impact upon the defense's ability to prepare and present its case that is more than speculative. *Id.* ¶ 19.

{16} We have found "[w]illful disregard" where "the prosecutor was actually aware, or can be presumed to have been aware, of the potential consequences of his act or omission[.]" *State v. Lucero*, 1999-NMCA-102, ¶ 26, 27 N.M. 672, 986 P.2d 468. "[A]ny conscious or intentional failure to comply" with discovery rules, as opposed to accidental or involuntary non-compliance, should be characterized as "willful." *State ex rel. King v. Advantageous Cmty. Servs., LLC*, 2014-NMCA-076, ¶ 14, 329 P.3d 738 (internal quotation marks and citation omitted). No intent is required to be shown. *Id.*

**B.      The State Willfully Failed to Discharge Its Duty to Timely Prosecute the Case**

{17} The State had an affirmative duty to "monitor the case and ensure that steps were being taken to bring Defendant to trial." *State v. Stock*, 2006-NMCA-140, ¶ 29, 140 N.M. 676, 147 P.3d 885. In *Harper*, our Supreme Court pointed out that the state may not ordinarily have a duty to make witnesses available for interviews, but "because the [s]tate . . . assumed the responsibility of scheduling witness interviews, it had the obligation to follow through in good faith." 2011-NMSC-044, ¶ 22. We have previously observed that "[t]he government's failure to make witnesses available to the defense upon request constitutes 'bureaucratic indifference.'" *State v. Montoya*, 2015-NMCA-___, ¶ 16, ___ P.3d ___ (No. 32,525, Feb. 25, 2015).

10

{18} Where the witness's testimony is essential to a case, "greater efforts [to produce a witness] would be required." *State v. Lopez*, 1996-NMCA-101, ¶ 25, 122 N.M. 459, 926 P.2d 784 (using the phrase "vigorous and appropriate"). Diligence in securing a witness's appearance requires the use of "process or other lawful means[.]" *State v. Haskins*, 2008-NMCA-086, ¶ 29, 144 N.M. 287, 186 P.3d 916. The prosecution's prior experience with the witness can bear on the reasonableness of its diligence. Previous cooperation and confirmation before a scheduled event can allow lesser efforts. *See Harper*, 2011-NMSC-044, ¶ 23; *State v. Martinez*, 1984-NMCA-106, ¶ 12, 102 N.M. 94, 691 P.2d 887. However, where the State knows that a witness has no inclination to appear, that calculus must change, and the State must, in its diligence, employ legal methods to secure witness's cooperation. *State v. Graham*, 1993-NMCA-054, ¶¶ 9-10, 115 N.M. 745, 858 P.2d 412 (making no effort to employ methods with legal effect and secure presence of an essential witness with whom the state was unable to establish contact, who had not been served with legal process, and was known not to want to testify is rightly considered to be a lack of both due diligence and good faith); *State v. Waits*, 1978-NMCA-116, ¶ 5, 92 N.M. 275, 587 P.2d 53 (holding that issuance and service of ineffective process "did not constitute good faith or due diligence on the part of the state in attempting to secure the attendance of the complaining witness").

{19}    The district court was blunt in its assessment of the State's efforts in light of the case history: "Based on the State's motion [to reconsider], all I see is a complete history of notice to the State that they had witnesses that they were going to have to get judicial intervention on." The State never offered an excuse to the district court for D.U.'s mothers's failure to appear on August 28, or on August 31, nor did it detail any efforts it made to legally insure either witness's presence for interviews. The failure with regard to obtaining D.U.'s mother's presence for interviews or testimony was total. Similarly, the State's inadequate approach to eleventh-hour interviews in general, and particularly with regard to its failure to secure D.U.'s participation in interviews is well within the bounds of willful disregard of their duties.

{20}    The district court was fully apprised of the length of time during which the State had taken no action in the face of these witnesses's uncooperation. It found that remedies "such as issuing subpoenas, requesting a show cause hearing, requesting material witness warrants, etc." were available and remained unemployed by the State. This, in light of the State's knowledge that D.U. and her mother did not intend to cooperate with the prosecution, rendered the State's failure to seek such remedies "until the day before trial" unreasonable. The district court also discussed the possible suppression of the statements for the State's noncompliance with the rules for

statements and subpoenas, even if interviews had taken place, and thereby reinforced its view of the State's culpability. *See* Rule 5-503(A) (stating that the notice of statement is to be served "upon the person to be examined" not less than five days prior to the scheduled date); Rule 5-511(B)(2) NMRA (stating that the subpoena is to be served "upon a person named therein . . . by delivering a copy thereof to such person"). The district court was clear in finding that "[t]here have been ample opportunit[ies] for motions or subpoenas" prior to August 28. We agree with the district court's sentiments, all of which are based firmly on the undisputed evidence.

{21} The district court's holding the State to have undertaken a responsibility that they must discharge in a "timely manner" is entirely in line with *Harper*, 2011-NMSC-044, ¶ 22. The State's insistence on running interviews only through its office, but not providing access to the witnesses, and then actively declining to produce them when Defendant wanted to conduct interviews on its own, is not a matter of late discovery, but a matter of no pretrial discovery of critical witnesses' statements. A failure to timely schedule interviews constitutes a collapse of the state's duty to progress a case to trial. *Cf. State v. Johnson*, 2007-NMCA-107, ¶ 15, 142 N.M. 377, 165 P.3d 1153 (holding that refusal to schedule requested interviews counts heavily against the state in speedy trial calculation); *State v. Talamante*, 2003-NMCA-135, ¶ 13, 134 N.M. 539, 80 P.3d 476 (holding that, in a relatively simple

case, the nearly one-year delay in the state "producing its witnesses for defense interviews was unreasonable and cannot be condoned"). The State's conduct was undertaken with manifest disregard for its duty in three respects. First, was the clear knowledge, for eight months or more, that D.U. and her mother were not cooperating. Second, was the fact that they failed to schedule interviews and obstructed Defendant's attempt to do them on his own. Last, we note the State's representation that a primary purpose of two rule extensions was to enable interviews, when the problem with the witnesses was known and the State was taking no action to secure their participation, whether willing or not. The latter is particularly questionable in the face of utter failure to subpoena mother or compel an interview with D.U. just days before trial. The State's actions must accord with its obligations of good faith and diligence. Its failure indicates bad faith and willful disregard of the situation it caused.

**C.  Efforts to Produce D.U. for Interview Show a Lack of Good Faith**

{22}    Unlike *Harper*, 2011-NMSC-044, ¶ 23 where the State had contact with its witness who unexpectedly did not appear, as well as time to reschedule interviews, the State was on notice of problems in this case, yet waited until the last minute to schedule interviews for which they gave inadequate notice. Caught short, the prosecutor sought to schedule an interview the day before trial that D.U. again

refused to attend. The transcript of the hearing on August 31 indicates that Defendant's trial was on a trailing docket, and the district court vacated this case, stating that it would begin another trial on that day as a result of the State's inability to proceed to trial without its witnesses. The State was out of time to commence trial. In *Harper*, our Supreme Court excused witness's absence from an interview a month before the trial as not culpable prosecutorial behavior because, although she had not been subpoenaed, she had confirmed that she would attend and had a history of cooperation and personal contact with the prosecutor. *Id.* The State has no such grace period on which to rely here, nor does it have the excuse the State had in *Harper* that the witness had cooperated prior to her failing to appear for the interview. In this case, the State never adequately subpoenaed D.U.'s mother, nor attempted to. The State's failure to seek any help from the court during the nine months it knew the witnesses did not want to cooperate demonstrates its lack of good faith in discharging its duty to make the witnesses available.

{23}     We agree with the district court that the history of the case was "notice to the State that they had witnesses that they were going to have to get judicial intervention on . . . starting . . . in January of 2009," noting that the matter "could have been referred to law enforcement," and there was "ample opportunity for motions or subpoenas, not on the Friday afternoon before trial is scheduled." The defense,

15

having been deprived of all chances at an interview by the district attorney's indifference, filed its emergency motion upon which the district court then convened its 2:05 p.m. hearing. The prosecutor still did not seek to have D.U. brought to court. Against standards set by the rules and our case law, the State's failure was an unreasonable lack of action. As a result of the State's willful indifference, Defendant was unable to interview the State's key witnesses or prepare for their trial testimony. Thus, the State's actions represent a failure of any diligence to a point of bad faith.

**D.      The State's Conduct Was Sufficiently Culpable as to Justify Exclusion**

{24}      D.U.'s mother, who had actively resisted contact with the DA's office,  was never noticed for a statement and did not appear at trial.  We have no question that excluding her testimony was supported by the circumstances of the case.  The State attempts to frame the issue regarding D.U. by asserting that despite being made available at the high school she refused to cooperate with defense counsel at pretrial interviews, thus attempting to place the burden on the defense to compel a statement. This is not the case.  The State subpoenaed her to discharge a duty it had assumed. D.U. skipped the scheduled interview, and on the day before trial, she returned to class before defense counsel arrived, and refused to appear at all.  Given her history, this was eminently foreseeable to the State, who had taken on the responsibility to her for a witness interview with the defense.  We have previously recognized that failure

16

to take measures to obtain the presence of recalcitrant witnesses when their desires are known constitutes a lack of good faith and due diligence in the prosecutor's behavior. *Graham*, 1993-NMCA-054, ¶ 12. *See State v. Fernandez*, 1952-NMSC-087, ¶ 9, 56 N.M. 689, 248 P.2d 679 (holding that a party failed to show diligence when it only subpoenaed a witness ten days prior to trial in a seven-month-old case and no abuse of discretion occurred in denying a continuance under the circumstances). As a result, the exclusion of D.U.'s testimony was justified by the record.

**E.     Defendant Was Prejudiced**

{25}     The district court summarized its position clearly:

> I find no reason to reconsider my ruling from last Friday. This case is a year old. The State's had opportunities to get the [c]ourt involved. Even had the interviews been held, they'd be subject to suppression because they're within a week of trial. This man is charged with serious offenses. The State has an obligation to prosecute it in a vigorous manner. It has not done so, whether it's through the conflict with the witnesses or not. I find no reason to reconsider, the motion to reconsider is . . . denied.

The district court recognized that Defendant had been in custody for a year "charged with serious offenses," and the State was most certainly aware of the trial date and its witness problems when it set its interviews. In light of the State's almost total disinclination to timely pursue its pretrial obligations, we regard the nearly one year of pretrial incarceration that Defendant underwent to be oppressive. Moreover,

17

Defendant asserted prejudice should he be compelled to begin his trial without interviewing D.U. "[W]hen discovery has been produced late, prejudice does not accrue unless the evidence is material and the disclosure is so late that it undermines the defendant's preparation for trial." *Harper,* 2011-NMSC-044, ¶ 20. That is most certainly the case where access to the two most critical witnesses in a case is not meaningfully provided by the prosecution prior to trial.

{26} The standard for prejudice, set forth in *Harper*, was clearly met in this case. Id. ¶ 20. Defendant did not sit on his rights, but actively pursued interviews with D.U. and her mother, including investigating how to serve his own subpoena. The State's failure undoubtedly undermined Defendant's ability to prepare for trial. Meanwhile, Defendant remained in custody while the State did practically nothing. The degree to which the prosecution failed to discharge its duties was prejudicial to both Defendant and his rights to a trial in which he can adequately confront the witnesses against him. We hold that the district court acted reasonably and within its discretion and affirm its denial of the State's motion to reconsider its belated oral motion for an order to show cause to be issued against D.U. and her mother.

**III.    CONCLUSION**

{27} We conclude that the State acted in willful disregard of its legal duties under the rules of procedure and governing law to a point where its actions were undertaken

18

in bad faith. In light of the foregoing, we affirm the district court and remand for further proceedings consistent with this Opinion.

{28}     **IT IS SO ORDERED.**


                              _____

                              **RODERICK T. KENNEDY, Judge**

**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Chief Judge**


_____

**TIMOTHY L. GARCIA, Judge**