**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marcos Xavier RAMIREZ, Frank Fredman, Angie Jenkins, Edward Lee Triplett and Wayne Neal Jenkins, Defendants–Appellants.**

No. 98–30272, 98–30273, 98–30278, 98–30279, 98–30282.

D.C. No. CR–97–60012–MRH.

United States Court of Appeals, Ninth Circuit.

Argued March 5, 2001.

Submitted Feb. 14, 2002.

Decided Feb. 25, 2002.

As Amended on Denial of Rehearing March 22, 2002.

**82**

Before T.G. NELSON, GRABER, and RAWLINSON, Circuit Judges.

## MEMORANDUM [*]

We have jurisdiction over Defendants' appeals pursuant to 28 U.S.C. § 1291, and we affirm.

### I

## INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective assistance of counsel claims are generally addressed on collateral, not on direct, appeal.[1] In this case, neither exception to this general rule applies.[2] The court expresses no view on the merits of any ineffective assistance claims presented.

### II

## CONFRONTATION CLAUSE

Defendants raise a number of Confrontation Clause issues. Because none of these issues was raised before the trial court, we review them for plain error.[3] Additionally, they are subject to harmless error analysis.[4]

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

**1.** *United States v. Reyes–Platero*, 224 F.3d 1112, 1116 (9th Cir.2000), *cert. denied*, 531 U.S. 1117, 121 S.Ct. 868, 148 L.Ed.2d 780 (2001).

**2.** *See id.*

**3.** *See United States v. Nazemian*, 948 F.2d 522, 525 (9th Cir.1991).

**4.** *Toolate v. Borg*, 828 F.2d 571, 575 (9th Cir.1987) ("A Confrontation Clause violation does not require reversal if the error was harmless beyond a reasonable doubt.").

## A. Informants' Statements

■ Defendants object to a number of statements made by Detective Haskins. None of the statements merits reversal. Haskins' statements regarding the unidentified informant were not introduced for their truth, but to provide background regarding the investigation. Thus, they were admissible.[5] The introduction of Haskins' testimony regarding the consistency of Kathy Ramirez's statements with the statements of other informants was not clear error, given the volume of Haskins' testimony and the passing nature of the reference. Moreover, in context, this passing reference was harmless. Haskins' reference to what he was told by jailhouse informants was undoubtedly hearsay. However, just as undoubtedly, it was harmless. He was explaining how he learned that defendants were *not* linked to another drug conspiracy, contrary to his earlier belief.

## B. Foundation

■ The introduction of the methamphetamine found in the tire was not predicated upon hearsay. The dog handler testified to the dog's "alert" on the tire. The handler then saw the tire after it was broken down, and saw what was in it. Officer Ericsson also saw the dog alert to the tire, saw the tire being searched, saw the methamphetamine package, and identified photographs of the drug. Haskins identified the specific exhibits as those on which he put exhibit tags in the garage.

Any claimed time disparity in the officers' testimony regarding the finding of the drugs does not create foundational problems. Defendants were free to cite the disparity in order to undermine the officers' credibility. No foundation or hearsay problems are associated with this disparity, however. We have considered the other foundation claims asserted by Defendants and have concluded that they are unpersuasive.

## C. Disposal of Evidence

Defendants make no showing of prejudice by stating that the evidence *might* have proved exculpatory.[6] Nor have Defendants established bad faith.[7]

## D. Co–Defendants' Confessions

■ The Government conceded a *Bruton* error as to defendant Fredman. Buck and Angie Jenkins' confessions should not have been introduced. Because Fredman did not raise this error before the trial court, however, we review for plain error, and the burden is on him to show prejudice.[8] He has not done so. Overwhelming evidence tied Fredman to the conspiracy and rendered the Jenkins' references to Fredman harmless. Cynthia Herndon's testimony solidly tied Fredman to the conspiracy. While she acknowledged her earlier lies, and her memory problems, these were exhaustively explored in cross-examination. Her basic testimony was not shaken. In addition, surveillance tied Fredman to the others, as did his admission to California officials that he had "cooked" ten pounds of methamphetamine in Oregon in July 1996. Moreover, the fact that Herndon was in the motor home when it was stopped in California corroborated the existence of a

---

5. *See United States v. Becerra,* 992 F.2d 960, 965 (9th Cir.1993).

6. *See United States v. Heffington,* 952 F.2d 275, 280 (9th Cir.1991).

7. *Id.*

8. *United States v. Arias–Villanueva,* 998 F.2d 1491, 1507 (9th Cir.1993) (citing *United States v. Longee,* 603 F.2d 1342, 1345 (9th Cir. 1979)).

relationship between Herndon and Fredman.

## III

## DUE PROCESS

 All of Defendants' due process claims are reviewed for plain error because they were not raised below.[9] The challenged statements of Angela and Cynthia were minor parts of their testimony. The statements did not, individually or cumulatively, render the trial unfair. No improper vouching by Haskins took place before the jury. Defense counsel elicited Mogle's allegedly improper vouching. The Government did not impliedly vouch for the remainder of Sheri Parker's testimony by pointing out flaws in her testimony. Haskins' statement as to the "mostly true" information he had received from other informants did not constitute vouching.

Because there was no error in any of the specific instances alleged, there was no cumulative error.

## IV

## SPOUSAL PRIVILEGE

### A. *As to Marcos Ramirez*

 Kathy Ramirez claimed her spousal privilege, which made her unavailable to testify as to her husband. Although she was forced to invoke her privilege before the jury, any error was harmless in this context. In this case, unlike most, the invocation of the spousal privilege did not keep the testimony of the invoking spouse from the jury.[10] Thus, the danger that the jury would make negative inferences about what the spouse would have said if she had testified was not of concern. Kathy Ramirez's grand jury testimony, which was thoroughly damaging to Marcos, was available. It became admissible as to Marcos Ramirez when Kathy invoked her privilege not to testify in court against her spouse. There was no danger that the jurors would infer anything more from the invocation of the privilege than what they could properly infer from the grand jury testimony.

### B. *As to the Others*

 The introduction of Kathy Ramirez's grand jury testimony *before* she had testified inconsistently on the stand reversed the order of proof contemplated by Rule 801. Eventually, however, Ramirez did reject substantial portions of her grand jury testimony. Thus, her grand jury testimony would have been admissible for impeachment, albeit somewhat later in trial. Given the realities of the positions of the parties, the error in the order of proof was harmless.

## V

## SEVERANCE

Because Marcos Ramirez did not move to sever before trial, we review his claim for plain error.[11] We see no error, much less plain error.

 As to Buck and Angie Jenkins, the district court did not abuse its discretion [12] in denying their motions. It was possible to give them a fair trial in conjunction with the others. This reasoning applies to Buck Jenkins' argument that his felon-in-possession charge should have been sev-

**9.** *Jones v. United States,* 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

**10.** *Cf. Courtney v. United States,* 390 F.2d 521, 526–27 (9th Cir.1968).

**11.** *Jones,* 527 U.S. at 388.

**12.** *United States v. Sarkisian,* 197 F.3d 966, 975 (9th Cir.1999).

ered as well. Failing to sever the charge was not an abuse of discretion.

## VI

## OTHER TRIAL ISSUES

We have examined the other claims of error and have determined that they are unpersuasive.

## VII

## SENTENCING ISSUES

### A. Defendant Fredman's State and Federal Sentences

Defendant Fredman appeals the district court's denial of his request that his federal sentence run concurrently with his state sentence. The district court did not abuse its discretion by denying the Section 5G1.3(b) concurrent sentence. Defendant's federal conviction did not take into account the new conspiracy in which he was participating when he left Oregon, for which he is serving his California sentence. The new conspiracy was a separate venture, for which defendant properly received a separate—and nonconcurrently running—sentence. No duplicate punishment for the same conduct is involved in defendant's federal sentence.

### B. Apprendi

All of the defendants' sentences exceed the statutory maximum term of twenty years' imprisonment prescribed by 21 U.S.C. § 841(b)(1)(C) for one count. However, all of the defendants were convicted of multiple counts. We recently held that when a judge calculates drug quantity under the United States Sentencing Guidelines and when "the Guidelines calculation exceeds the statutory maximum

for any count in a case involving multiple counts, then the mandatory provisions of § 5G1.2(d) come into play regarding the question of consecutive sentences." [13] In such a situation, § 5G1.2(d) "would require consecutive sentences to achieve the total punishment calculated by the Guidelines." [14] Accordingly, under *Buckland*, the district court's error was harmless. Pursuant to § 5G1.2(d), the court was required to stack the sentences in order to achieve the total punishment calculated by the Guidelines—the total punishment of which the defendants currently complain.

AFFIRMED.

---

**13.** *United States v. Buckland,* 277 F.3d 1173 at Part IV.B. (9th Cir.2002) (en banc).

